A02A2366. HEAD v. BROWN et al.
(578 SE2d 555)

MIKELL, Judge.

Carolyn Head appeals two orders entered on June 14, 2002, by Senior Judge Don A. Langham, in which he vacated the order of Judge Christopher Edwards transferring the underlying case from Upson County to Muscogee County for trial and denied reconsideration of Judge Edwards's order voluntarily recusing himself.

This case began in 1995, when Head filed a medical malpractice action in Upson County Superior Court against Benjamin Brown, M.D., Louis Mameli, M.D., Thomaston Obstetrical & Gynecological Associates, P.C., and Upson County Hospital, Inc. d/b/a Upson Regional Hospital. The case was originally assigned to Judge Paschal English, who recused himself in 1998.

It then was assigned to Judge Edwards, and trial was specially set on January 3, 2000. After two days of individual voir dire, Judge Edwards determined that an impartial jury could not be impaneled in Upson County because many of the prospective jurors had direct and indirect relationships with the defendant doctors and the hospital. Sua sponte, on February 3, 2000, pursuant to OCGA § 9-10-50, he ordered that venue in the case be transferred to a county to be mutually agreed upon by the parties or to be selected by him in the event the parties could not agree. The defendants sought an interlocutory appeal of Judge Edwards's order; however, we denied their application, and the Supreme Court denied their petition for certiorari. On December 21, 2000, Judge Edwards ordered that the trial would take place on April 23, 2001, in Muscogee County.

On February 21, 2001, Judge Edwards voluntarily recused himself, after he learned that his former law firm had a lien for attorney fees against the hospital's insurance company, stemming from unrelated litigation with which he was involved before taking judicial office. The case was then assigned to Upson County Superior Court Judge Johnnie Caldwell. In March 2001, Head sought reconsideration of Judge Edwards's recusal order, and the defendants filed a motion for reconsideration of the order transferring venue to Muscogee County. It does not appear from the record that Judge Caldwell ruled on the motions. Head moved to disqualify Judge Caldwell. Senior Judge John Langford heard the motion on June 19, 2001, and issued an order disqualifying Judge Caldwell.

Next, Senior Judge Langham was appointed to preside over the

case. On June 14, 2002, he granted the defendants' motion to vacate Judge Edwards's orders changing venue of the case to Muscogee County and denied Head's motion for reconsideration of Judge Edwards's voluntary recusal order. This appeal followed. We affirm.

1. First, Head argues that Judge Langham, acting as an Upson County Superior Court judge, lacked jurisdiction to vacate the orders changing venue after Judge Edwards transferred the case to Muscogee County. However, Head ignores the fact that nothing in the February 3 and December 21, 2000, orders indicates that jurisdiction was being transferred or that the case would not be heard by Judge Edwards.[1] The orders simply provide that the case would be tried in the Muscogee County Courthouse in front of Muscogee County jurors. Additionally, the February 3 order states that motions in limine would be set "on a regularly scheduled Upson County hearing day," which indicates that Judge Edwards intended to retain jurisdiction over pretrial matters.

OCGA § 9-10-50 (a) and (b), on which Judge Edwards's orders were based, provide that after conducting voir dire, if a trial judge finds that an impartial jury cannot be impaneled in the county where a civil case is pending, that case may be transferred to a county agreed upon by the parties or, in the event that the parties cannot agree, to a county selected by the judge. See generally *Claxton Poultry Co. v. City of Claxton*, 155 Ga. App. 308, 311 (1) (C) (271 SE2d 227) (1980).

Davis and Shulman's Georgia Practice and Procedure provides an instructive distinction between the concepts of venue and jurisdiction in civil cases:

> The principal point to be remembered about venue is that it denotes a place, that is to say, a geographical division actually created by statute or otherwise, and having physical boundaries on the surface of the earth. Since we quite properly say that when a matter is not subject to a court because of the venue, the court does not have jurisdiction, some confusion between the terms has inevitably resulted. This confusion can best be avoided by remembering that in its essence, the term "jurisdiction" means power and authority, and "venue" means a geographical location. It is said, therefore, for the purpose of simplicity, that jurisdiction is power, and venue is place.

Ruskell, § 5-1, p. 137 (2001 ed.). Here, it is apparent from the February 3 and December 21, 2000, orders that Judge Edwards intended

---

[1] The orders were entered prior to Judge Edwards's recusal.

for Upson County to retain power over the case while changing the place where the trial would be conducted.

Head cites *Johnston v. State*, 118 Ga. 310 (45 SE 381) (1903), in which the Supreme Court held that when venue in a criminal case has been changed, the county from which the case was transferred loses jurisdiction to try the accused. Id. at 312. In addition to the obvious distinction that *Johnston* was a criminal case, it is also distinguishable from the case at bar because the defendant in *Johnston* was actually tried in the county to which venue had been transferred. It was not until after a mistrial resulted that the original county sought to try the defendant again on a new indictment based on the same conduct. The Supreme Court concluded that the original county lacked jurisdiction to try that defendant. Id. Here, there is no indication in the record that the case was ever assigned to a Muscogee County judge or that any rulings were entered other than those in Upson County. Furthermore, it is clear from *Johnston* that the Supreme Court contemplated the possibility that an order changing venue might be revoked when the Court stated that "[t]he superior court of Whitfield county has the exclusive right to try the accused *as long as the order changing the venue to that county stands unrevoked and unchanged.*" (Emphasis supplied.) Id. at 314.

Accordingly, we conclude that Judge Langham's order vacating Judge Edwards's previous orders was not void for lack of jurisdiction and affirm on this ground.

2. In two related errors, Head argues that even if Judge Langham had jurisdiction over the case, he erred in vacating the February 3 and December 21, 2000, orders transferring venue. Head contends that because there is no indication that Judge Edwards abused his discretion in determining that an impartial jury could not be found in Upson County, Judge Langham acted improperly by vacating the previous orders. However, this appeal concerns the validity of Judge Langham's June 6, 2002, order, which is the most recent ruling on the issue of venue. Regardless of which individual judge actually entered the June 14, 2002, order, it was the trial court who vacated its own previous orders changing venue. Therefore, we must consider whether the court abused its discretion in taking that action, not whether the earlier orders constituted an abuse of discretion.

As a preliminary matter, the trial court properly recognized that the February 3 and December 21, 2000, orders were interlocutory and therefore subject to revision and modification by the trial court at any time before a final judgment was entered. *Barber v. Collins,* 201 Ga. App. 104, 105 (2) (410 SE2d 444) (1991), citing *Hubbert v. Williams*, 175 Ga. App. 393, 394-395 (1) (333 SE2d 425) (1985). In fact, we have expressly found that a trial court did not abuse its discretion in reconsidering its earlier ruling on a motion for change of

venue. See *Holt v. Scott*, 226 Ga. App. 812, 814 (1) (487 SE2d 657) (1997).

Now we must consider the merits of the June 14, 2002, order in which the trial court determined that a change of venue from Upson County was not required. "It is well established in Georgia that the matter of whether a change of venue is appropriate lies within the sound discretion of the trial court and the exercise of this discretion will not be disturbed unless an abuse of this discretion is shown." (Punctuation omitted.) *Holt*, supra at 813-814, citing *Claxton Poultry Co.*, supra at 309 (1). Applying this standard to the case before us, we conclude that the trial court did not err in vacating its earlier orders changing venue.

Head contends that a trial of this case in Upson County would violate her right to due process and a fair trial. She relies on the "small town syndrome" argument considered in *Cunningham v. State*, 248 Ga. 558, 562 (8) (284 SE2d 390) (1981), for her contention that a fair and impartial jury cannot be impaneled in the county. She argues that "hardly any prospective juror will not have formed some impression or opinion about the case" and that "[t]he level of knowledge and frequency of personal relationships between the [d]efendants and prospective jurors create just such a 'small town syndrome' in this case." This argument is without merit. Significantly, in *Cunningham*, which is a death penalty case, the Supreme Court rejected the defendant's "small town syndrome" argument and found that he failed to show that pretrial publicity created " 'a pattern of deep and bitter prejudice' " in the community. Id., citing *Irvin v. Dowd*, 366 U. S. 717, 727 (81 SC 1639, 6 LE2d 751) (1961). In the case sub judice, the record is devoid of any evidence of pretrial publicity or general knowledge of the case within the community.

Further, our Supreme Court has expressly disapproved of a per se juror disqualification rule in medical malpractice cases based on the physician-patient relationship. In *Cohen v. Baxter*, 267 Ga. 422 (479 SE2d 746) (1997), the Court acknowledged a trial court's discretion in deciding whether to retain or dismiss a juror and held as follows:

> The fact that the doctor-patient relationship exists between a juror and a defendant does not justify removing this discretion from the trial courts. . . . A per se rule cuts too broadly and is inconsistent with the traditional discretion given trial courts in this area. Furthermore, there are various close and confidential relationships that a juror may have with a party and the establishment of a per se rule to the doctor-patient relationship will open the door to the expansion of the per se rule to these other numerous catego-

ries. Finally, a per se rule may render it extremely difficult to obtain a full panel for a medical malpractice [case] trial in some rural counties. Therefore, we conclude that the Court of Appeals erred in requiring trial courts to excuse for cause any jurors who have an ongoing relationship with a doctor who is the defendant in a medical malpractice action.

Id. at 423-424 (1). Accordingly, to the extent that Head advocates a rule that would automatically disqualify potential jurors in medical malpractice cases due to an ongoing doctor-patient relationship with a defendant doctor, her argument is without merit.

Finally, contrary to Head's argument, Judge Langham did not abuse his discretion in determining that a fair trial could be had in Upson County. After reviewing the transcript of the voir dire proceedings conducted on January 3 and 4, 2000, Judge Langham concluded that contrary to the earlier ruling, a change of venue was not warranted. He found that while 125 prospective jurors were summoned, 36 were excused or deferred before voir dire began; that another 30 people failed to appear; and that only 59 individuals ultimately made up the jury pool. Judge Langham further recognized that although 21 panel members were patients of the defendant doctors, 15 of them stated that they could be fair and impartial. After concluding that he was not satisfied that an impartial jury could not be found in Upson County, Judge Langham stated that the court would take the following steps to impanel a jury: increase the number of prospective jurors summoned, closely monitor requests to be excused from jury duty, and carefully evaluate the impartiality of jury panel members. We cannot conclude that Judge Langham acted improperly in determining that a change of venue was not warranted.

3. Finally, Head argues that Judge Langham erred in denying her motion for reconsideration of Judge Edwards's voluntary recusal order. Head fails to cite any authority supporting her argument that a trial court judge has the power to compel a fellow judge to preside over a case, and our research reveals none.

Furthermore, while Judge Edwards might not have been required to grant a motion to recuse under the circumstances in this case, we cannot conclude that he acted improperly in voluntarily recusing himself, based on the possible appearance of impropriety resulting from his former law firm's pecuniary interests in recovering against the defendant hospital's insurer. "When considering the issue of disqualification, both OCGA § 15-1-8 and Canon 3E of the Code of Judicial Conduct should be considered." (Citations omitted.) *Gillis v. City of Waycross*, 247 Ga. App. 119 (543 SE2d 423) (2000). OCGA § 15-1-8 (a) provides a nonexhaustive list of grounds for the disquali-

fication of a judge, including a pecuniary interest in the outcome of a case. Significantly, Canon 3 (E) (1) provides that "[j]udges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned."

The trial court did not err in denying Head's motion to vacate Judge Edwards's voluntary recusal order. It is certainly regrettable that a trial on the merits of Head's claims has been delayed by the voluntary recusals of two judges and the disqualification of a third; however, our power is limited to correcting errors of law, and we discern none in this case. We also note that Head's appeals and motions for reconsideration have contributed to the delay as well.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 25, 2003 —

*Stephens & Shuler, Charles W. Stephens, W. Ashley Hawkins,* for appellant.

*Willis, McKenzie & Long, Edward L. Long, Jr., Mark L. Degennaro, Allen & Weathington, Paul E. Weathington, Dena K. Stoddard,* for appellees.