## S10A0674. MOON v. THE STATE.

(696 SE2d 55)

CARLEY, Presiding Justice.

In 2007, Jason Jerome Moon was indicted for murder and other offenses. When the case was called for trial on April 7, 2008, Moon orally moved for a change of venue on the ground of pre-trial publicity and introduced several newspaper articles into evidence. After voir dire, the trial court granted a change of venue, but stated that the State could file a motion to reconsider, and ordered the parties either to agree on a proper venue or to bring the matter back by motion for the court to determine a proper venue. The State subsequently appealed from a separate order granting a motion to suppress Moon's pre-trial statements, which this Court affirmed in part and reversed in part. *State v. Moon*, 285 Ga. 55 (673 SE2d 255) (2009).

The State then filed a motion to reconsider the change of venue, which a different judge granted on October 1, 2009 on the ground that "there was never a written motion filed as is required by statute, and no evidentiary hearing was ever conducted." The trial court also held that the State's appeal acted as a supersedeas, and that the order changing venue was collateral and the State was not required to appeal it at the same time as the suppression order. The trial court certified its order for immediate review, and Moon appeals pursuant to our grant of his application for interlocutory appeal.

Moon contends that the trial court was not authorized to grant the motion for reconsideration, because it was not made until after expiration of the term of court in which the order changing venue was entered. In civil cases, " 'an interlocutory ruling does not pass from the control of the court at the end of the term if the cause remains pending.' [Cits.]" *Lott v. Arrington & Hollowell*, 258 Ga. App. 51, 56 (3) (572 SE2d 664) (2002). This principle is required by the Civil Practice Act (CPA). OCGA § 9-11-6 (c). In criminal cases, however, the pre-CPA rule continues to apply, and a trial court's inherent power to revoke interlocutory rulings still ceases with the end of the term. *Pledger v. State*, 193 Ga. App. 588, 589 (2) (a) (388 SE2d 425) (1989). Compare *Rooney v. State*, 217 Ga. App. 850, 852 (459 SE2d 601) (1995) (involving reconsideration of a bond order and distinguishing *Pledger*). Indeed, this is the general common law rule which applied in federal courts before terms of court were abolished therein. *United States v. Breit*, 754 F2d 526, 530 (4th Cir. 1985).

Contrary to the trial court's order, any supersedeas during the State's appeal from the suppression order did not affect the time for filing a motion for reconsideration. Where the State files an immediate, direct appeal as of right from a trial court's grant of a motion to suppress evidence illegally seized, the filing of the notice of appeal

generally acts as a supersedeas. *State v. Vansant*, 208 Ga. App. 772, 776 (2) (431 SE2d 708) (1993), aff'd in relevant part, *Vansant v. State*, 264 Ga. 319, 321 (3) (443 SE2d 474) (1994). However, this is an application of the general rule in OCGA § 5-6-45. *State v. Vansant*, supra. Under that statute, the notice of appeal in criminal cases "shall serve as supersedeas in all cases where a sentence of death has been imposed or where the defendant is admitted to bail. . . ." OCGA § 5-6-45 (a). As neither condition was met in this case, the notice of appeal filed by the State did not act as a supersedeas and, therefore, did not prevent the trial court from hearing a timely motion for reconsideration. Moreover, even if the notice of appeal did serve as supersedeas, it still did not preclude the simultaneous hearing of a timely motion for reconsideration in the trial court, as the order to be reconsidered would not have involved the execution of a sentence and would not have directly or indirectly affected the issue on appeal. *Roberts v. State*, 279 Ga. App. 434, 437 (1) (631 SE2d 480) (2006), overruled on other grounds, *DeSouza v. State*, 285 Ga. App. 201, 202, fn. 2 (645 SE2d 684) (2007). "Filing a notice of appeal may deprive a court of its power to execute the sentence but it does not supersede every other activity of a trial court." *Strickland v. State*, 258 Ga. 764, 766 (1) (373 SE2d 736) (1988).

Therefore, the State could have filed the motion for reconsideration during the same term in which the order changing venue was entered. Because the State failed to do so, the trial court was not authorized to vacate that order. *Pledger v. State*, supra. See also *Harris v. State*, 278 Ga. 280, 282, fn. 3 (600 SE2d 592) (2004); *Donnelly v. Stynchcombe*, 246 Ga. 118 (269 SE2d 10) (1980). Accordingly, the trial court's order granting the motion for reconsideration is a nullity and must be reversed, and we direct the trial court to reinstate its order changing venue. *Chishti v. State*, 288 Ga. App. 230, 231 (653 SE2d 830) (2007). Remaining enumerations of error are moot. *Chishti v. State*, supra at 231, fn. 2.

*Judgment reversed and case remanded with direction. All the Justices concur.*

NAHMIAS, Justice, concurring.

I join the majority opinion in full, but write separately to make two points about the holding that "[i]n criminal cases, . . . the pre-[Civil Practice Act] rule continues to apply, and a trial court's inherent power to revoke interlocutory rulings still ceases with the end of the term. *Pledger v. State*, 193 Ga. App. 588, 589 (2) (a) (388 SE2d 425) (1989)." Maj. Op. at 304.

1. First, I think it is important to recognize that this rule, which comes from the pre-Revolution English common law, seems outdated, but this Court probably lacks the authority to change it. At

common law, the rule for both final and interlocutory orders, in both civil and criminal cases, and in both Georgia and federal courts, was that the trial court's inherent authority to reconsider the order expired at the end of the term of court in which the order was entered. See, e.g., *McCandless v. Conley*, 115 Ga. 48, 51 (41 SE 256) (1902) (citing cases and Black's A Treatise on the Law of Judgments). The rules in this area reflect a balance between the need for *finality* of judicial decisions and the understanding that trial courts should have the opportunity to reach the *correct* decisions.

With respect to final judgments, the common law rule has remained essentially unchanged in civil and criminal cases. It makes sense that when the entire case or relevant portion is deemed concluded by final judgment, the trial court cannot reconsider the issues after a short period (like the end of the term) unless the case is successfully appealed or challenged in one of the other established but highly restrictive exceptions to finality (such as a petition for habeas corpus in criminal cases). Most of the cases cited by the appellant involve final judgments, including *Harris v. State*, 278 Ga. 280, 282, n. 3 (600 SE2d 592) (2004) (after-term motion to reconsider a final order denying habeas corpus petition), and *Donnelly v. Stynchcombe*, 246 Ga. 118 (269 SE2d 10) (1980) (same).

Interlocutory rulings are different. For better or worse, many civil and criminal cases in today's legal system remain pending for more than one — sometimes many more than one — term of court. Where a case remains pending in the trial court across terms, although there are certainly interests in not relitigating the same issues between the same parties or undermining vested interests in initial rulings, those interests are weakened where the trial court realizes, on motion for reconsideration, renewed motion on the same issue, or sua sponte, that it has made an error. The relevant evidence may have changed as the case progressed, or the controlling law may have changed, or the court may simply recognize, upon further reflection, that it made the wrong decision. To avoid fruitless repetition of claims, the trial court must have broad *discretion* to deny review of its own prior decision. But to hold that the trial court has no *authority* to do so in a later term is to set in stone some initial rulings that, by the time the case is final and ripe for appeal, are erroneous — perhaps even obviously erroneous. That is contrary both to the interests of justice and judicial economy. Compare OCGA § 15-1-3 ("Every court has power: . . . (6) To amend and control its processes and orders, so as to make them conformable to law and justice . . . ; and (7) To correct its own proceedings before final judgment.").

As the majority opinion and *Pledger* explain, the General Assembly adopted this logic with respect to civil cases almost a

half-century ago, when the Civil Practice Act reformed many common law rules for civil cases, including eliminating the end-of-term rule with respect to interlocutory rulings, except for rulings that are the subject of an interlocutory appeal. See OCGA § 9-11-6 (c) ("The continued existence or expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action which has been pending before it, except as otherwise specifically provided by law."), OCGA § 9-11-60 (h) ("The law of the case rule is abolished; but generally judgments and orders shall not be set aside or modified without just cause and, in setting aside or otherwise modifying judgments and orders, the court shall consider whether rights have vested thereunder and whether or not innocent parties would be injured thereby; provided, however, that any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."). The reported cases do not suggest that this more flexible rule has created any problems in civil cases, nor am I aware of any major complaints about the civil rule.

The common law rule for interlocutory rulings has been abandoned in federal courts for criminal as well as civil cases, based upon the abolition of terms of court but without the specific authority of a statute or rule. See *United States v. Breit*, 754 F2d 526, 530 (4th Cir. 1985) ("A more recent interpretation of this general common-law rule in the criminal context provides that despite the nonexistence of a specific rule in the Federal Rules of Criminal Procedure, a district court has the inherent power, and thus jurisdiction, to reconsider interlocutory orders prior to entry of judgment on such orders." (citing cases)). Again, I have seen no signs that this more flexible rule has created significant problems or complaints.

The Georgia cases reaffirming the common law rule for criminal cases, including *Pledger* and the majority opinion, do not explain why that old rule produces better and more just results or is supported by other policy considerations relevant to a modern legal system. The rule that Georgia now applies to civil cases avoids the arbitrariness of a rule based on the expiration of a term of court, which, depending on when in the term and where in the state the initial ruling is made, may allow the trial court no time at all to reconsider its ruling (if the order is issued on the last day of a term), or be limited to two months (in Fulton County, which has two-month terms), or be open for as long as six months (in counties with only two terms per year). See generally OCGA § 15-6-3 (establishing terms of court for the superior courts). See also *Breit*, 754 F2d at 530 (explaining that the federal rules now "provide a constant and uniform standard of timeliness under the rules and statutes instead

of an uncertain and variable one depending on terms of court").

The end-of-term common law rule was established, of course, by judicial decisions, and one of the glories of the common law system is that its rules can evolve over time through further judicial decisions made in light of reason, experience, and new circumstances. See *Funk v. United States*, 290 U. S. 371 (54 SC 212, 78 LE 369) (1933) (" 'This flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law. . . . And as it was the characteristic principle of the common law to draw its inspiration from every founta[in] of justice, we are not to assume that the sources of its supply have been exhausted. On the contrary, we should expect that the new and various experiences of our own situation and system will mould and shape it into new and not less useful forms.' ") (citation omitted). As Justice Holmes colorfully put it, "[i]t is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Oliver W. Holmes, The Path of the Law, in Collected Legal Papers 187 (Harcourt, Brace and Howe 1920). The longer length of cases in the legal system today, our trial courts' experience under the Civil Practice Act and the federal courts' experience in criminal cases, and good reason all suggest that the common law rule prohibiting after-term reconsideration of interlocutory rulings in criminal cases should itself be reconsidered.

This Court's authority to do so by judicial decision is limited, however, by statute. See OCGA § 1-1-10 (c) (1) (stating that Georgia's 1784 act "adopting the common laws of England as they existed on May 14, 1776," remains in effect "until otherwise repealed, amended, superseded, or declared invalid or unconstitutional"). See also *Crowder v. Dept. of State Parks*, 228 Ga. 436, 439-440 (185 SE2d 908) (1971) (holding that the sovereign immunity doctrine established by pre-Revolution English common law could be modified only by statute, over a dissent by Justice Felton, id. at 445, arguing that "this court still has the power, duty and authority to alter court-made common law rules by determining whether strictly court-made common law rules, not altered by statute or constitution, may be adjusted to different government and different social needs, different from those existing at common law"). Accordingly, while I believe it is useful to draw attention to this issue, if the common law rule for reconsideration of interlocutory rulings in criminal cases is to be revised to conform to the rule that has worked just fine in Georgia's civil cases for more than 45 years, it will be up to the General Assembly to do it.

2. I also think it is important to point out that, in relying on the general rule that a trial court may not reconsider interlocutory rulings in criminal cases after the term ends, the majority opinion does not purport to eliminate a well-recognized and important exception to that rule, which allows after-term reconsideration, at least of constitutional issues, where the "evidentiary posture" of the issue has changed. This exception is essential to avoid the most obviously unjust, and potentially unconstitutional, results of the general rule, in situations where an interlocutory ruling becomes clearly wrong due to a change in the evidentiary record while the case is in the trial court.

This is not a new exception. Indeed, this Court noted a variation of it in a decision issued more than a century ago, just three months after the *McCandless* opinion on which *Pledger* relied. See *Collins v. Carr*, 116 Ga. 39, 39 (42 SE 373) (1902) ("An interlocutory judgment of a trial judge upon an equitable petition, affirmed by this court, is not res judicata unless it was based solely upon a question of law. If based upon law and evidence, it is not binding at the final trial unless the proof is then substantially the same as at the interlocutory hearing."). The "evidentiary posture" exception remains well-recognized in the one post-CPA civil context where the law of the case doctrine still strictly applies, notwithstanding the unqualified language of OCGA § 9-11-60 (h) that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court." See, e.g., *IH Riverdale, LLC v. McChesney Capital Partners, LLC*, 292 Ga. App. 841, 843 (666 SE2d 8) (2008) ("An exception exists where the evidentiary posture of the case changes in the trial court after the appellate court decision."). The strict law of the case doctrine for appellate rulings applies to criminal cases as well, see *Roulain v. Martin*, 266 Ga. 353, 354 (466 SE2d 837) (1996), but again with the exception for situations "when the evidentiary posture of the case changes such that 'the original evidence submitted is found to be insufficient, and the deficient evidence is later supplemented.'" *Pierce v. State*, 278 Ga. App. 162, 163-164 (628 SE2d 235) (2006) (citation omitted).

Not surprisingly, given its application even where the law of the case doctrine remains strongest, the exception also has been applied to constitutional issues in criminal cases. One key example is with regard to rulings on the admissibility of evidence from confessions and searches, where the evidence offered in a pretrial hearing, resulting in the trial court's ruling against suppression, sometimes changes as further facts are developed during trial. In *Chastain v. State*, 158 Ga. App. 654 (281 SE2d 627) (1981), the Court of Appeals

explained that

> [w]here, in the progress of a criminal trial, it becomes probable that there has been an unconstitutional seizure of papers of the accused, it is the duty of the trial court to entertain an objection to their admission in evidence against him on a motion for their exclusion, and to decide the question as then presented; even where a motion to return the papers has been denied before trial and by another judge. "(T)he legality of the search too often cannot truly be determined until the evidence at the trial has brought all circumstances to light." "(N)ew facts, new light on credibility of government witnesses, or other matters appearing at trial may cast reasonable doubt on the pretrial ruling." It then becomes the duty of the trial judge to consider de novo the issue of suppression and, if necessary, hold a hearing out of the presence of the jury. Because the grant of a suppression motion is a matter of law for the trial court, it is not subject to the double jeopardy restrictions of evidentiary findings which are not subject to appeal by the state. We agree with the statement in the appellant's brief that for over a hundred years, the Georgia courts have held that the trial court may set aside its own order ex mero motu; so long as the order is vacated within the term. Whether to do so is within the sound discretion of the trial court.

Id. at 655 (citations omitted).

The Court of Appeals later held that the term limit noted in *Chastain* does not apply where the trial court does not vacate its original order denying suppression but instead, in a later term, addresses the matter as a "renewed" motion to suppress. See *State v. Dukes*, 234 Ga. App. 343, 345 (507 SE2d 147) (1998). See also *Ritter v. State*, 272 Ga. 551, 553 (532 SE2d 692) (2000) (stating that "a court retains broad discretion over interlocutory evidentiary rulings which may be modified at any time until entry of final judgment" and that the "trial court may reverse a ruling on a pretrial suppression motion at any time during the pendency of the case"). Indeed, trial courts must have the flexibility to reconsider constitutional rulings based on the full record before them, because, as the United States Supreme Court said in a case relied on in *Chastain*, "[a] rule of practice must not be allowed for any technical reason to prevail over a constitutional right." *Gouled v. United States*, 255 U. S. 298, 313 (41 SC 261, 65 LE 647) (1921), overruled on other grounds, *Warden v. Hayden*, 387 U. S. 294 (87 SC 1642, 18

LE2d 782) (1967).

Similarly, as the majority acknowledges, see Majority Op. at 304, the Court of Appeals has held that *Pledger*'s rule does not apply in all contexts. Thus, in *Rooney v. State*, 217 Ga. App. 850 (459 SE2d 601) (1995), a seven-judge panel of the court upheld, over a dissent by the author of *Pledger*, see id. at 853 (Beasley, C. J., dissenting), the trial court's after-term reconsideration of a motion to revoke bond. See *Rooney*, 217 Ga. App. at 852-853. Unlike the ruling on motions for new trial in *Pledger*, the grant or denial of bond is the sort of interlocutory ruling for which the relevant facts often change while the case is pending. The Court of Appeals therefore explained that "we do not consider the issuance of a bond order to be an 'interlocutory ruling' of the type contemplated in *Pledger*," and "[t]o hold otherwise would be the equivalent of setting bond orders in stone after the expiration of the term in which they are entered." *Rooney*, 217 Ga. App. at 852.

The precise scope of this exception, and the situations in which a party is entitled to offer additional evidence in an effort to invoke it, need not be determined in this case. But it is important that the majority's unqualified reliance on *Pledger*'s general rule not be read to eliminate, sub silentio, this limited but essential exception.

3. The majority properly does not apply the changed-evidence exception in this case, because the State's motion for reconsideration of the trial court's venue ruling did not offer or identify any new or different evidence regarding pretrial publicity. Instead, the State simply asked the trial court to reach a different conclusion based on the existing record and some legal arguments the State had failed to raise previously. The general rule stated in *Pledger* and endorsed by this Court today does not allow the trial court in a criminal case simply to reconsider its decision after the term ends, without a change in the underlying facts. Compare *Head v. Brown*, 259 Ga. App. 855, 857-859 (578 SE2d 555) (2003) (upholding reconsideration, several terms later, of a ruling granting a change of venue in a civil case, despite no apparent change in the evidence).

This case therefore differs from *Morrow v. State*, 272 Ga. 691 (532 SE2d 78) (2000). There, the trial court initially granted a motion to change venue in 1995, based on the consent of the parties and without hearing evidence. See id. at 697. Many terms later, in 1998, the State revoked its consent and moved for an evidentiary hearing, arguing that venue could remain in Hall County due to the paucity of media coverage in the three-plus years since the crimes. See id. This Court upheld the trial court's authority to order an evidentiary hearing and, based upon the new evidence, to reverse its prior decision and order that venue not be changed. See id. Had the State taken a similar approach in this case, the result might be

different. But in most cases involving the *granting* of a change of venue based on pretrial publicity, reconsideration will not be permissible, because the initial ruling will result in the formal transfer of the case to another county with a different jury pool, making additional evidence regarding the jury pool in the original venue irrelevant.

The situation may often be different, however, when the original ruling, which may be made based on evidence presented in a hearing before jury selection begins, see OCGA § 17-7-150 (a) (1) (providing for pretrial motions to change venue), is to *deny* a motion to change venue based on pretrial publicity. If jury selection begins in a later term, and it becomes apparent that the jury pool has in fact been prejudicially influenced by pretrial publicity, the trial court would be obligated to consider, in its sound discretion, whether its prior ruling remained correct. To hold that the prior ruling must stand because the term has ended, despite new evidence that undermines that ruling, would allow an outdated common law rule of practice to prevail over the defendant's constitutional right to be tried by an impartial jury.

With this comment about the questionable vitality of the general common law rule, and this understanding that the majority is not quietly eliminating the well-recognized exception that prevents that rule from producing the most obvious injustices, I concur in the majority opinion.

DECIDED JUNE 7, 2010.

*James W. Smith*, for appellant.

*Robert W. Lavender, District Attorney, James W. Webb, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellee.