315 Ga. 444
FINAL COPY

S22A0979.  KELLY v. THE STATE.

WARREN, Justice.

After Jeremiah Kelly was convicted of murder, the trial court granted his motion for new trial, but gave the State an opportunity to request a rehearing within 30 days.  The State filed such a request within that time, but did so after the expiration of the term of court in which the order granting a new trial was entered.  Nevertheless, the trial court purported to enter a denial of Kelly's motion for new trial.  Kelly appeals from the trial court's order denying his motion for new trial.  Because the trial court did not have jurisdiction to consider the State's out-of-term request for rehearing or to enter an order denying the motion for new trial, we vacate that order and remand the case for further proceedings pursuant to the trial court's initial order granting Kelly a new trial.

1.  Kelly was convicted of felony murder and other crimes in

connection with the shooting death of Anthony Dewayne King and the aggravated assaults of Anthony Davis and Travis Davis.[1] Through trial counsel, Kelly timely filed a motion for new trial on April 8, 2015.[2] On March 7, 2019, Kelly filed a motion to disqualify the District Attorney's office based on an alleged conflict of interest,

---

[1] The crimes occurred on August 3, 2012. On October 30, 2012, a Richmond County grand jury indicted Kelly and William Henry Clark for malice murder, felony murder predicated on aggravated assault, two counts of aggravated assault, and three counts of possession of a firearm during the commission of a crime. Kelly was tried separately from March 16 to 20, 2015, and the jury found him not guilty of malice murder but guilty of all the other crimes with which he was charged. On March 23, 2015, the trial court sentenced Kelly to serve life in prison without the possibility of parole for malice murder and consecutive terms of years for the other offenses. Clark was tried in October 2016 and convicted of felony murder and other offenses, and we affirm his conviction today in a separate opinion. See *Clark v. State*, 315 Ga. 423 (___ SE2d ___) (2023).

[2] On the same day, trial counsel filed a motion to modify sentence, but the record does not show that the trial court ever ruled on that motion. On April 17, 2015, trial counsel also filed a notice of appeal on Kelly's behalf, but that premature notice of appeal could not have ripened until the motion for new trial was no longer pending, see *Pounds v. State*, 309 Ga. 376, 382 (846 SE2d 48) (2020) ("[B]ecause the motion for new trial is pending, any notice of appeal to an appellate court 'has not yet ripened, and the trial court retains jurisdiction to dispose of the motion for new trial.'") (quoting *State v. Hood*, 295 Ga. 664, 664 (763 SE2d 487) (2014)), and the order granting a new trial, as discussed below, was favorable to Kelly and so could not have provided a basis for him to appeal, see *Bivens v. Todd*, 222 Ga. 84, 85 (148 SE2d 424) (1966) (after enactment of Appellate Procedure Act of 1965, as before, a party's appeal had to be dismissed when "the only judgment from which he could appeal [was] completely favorable to him").

2

and current appellate counsel renewed that motion on March 31, 2021.  On April 22, 2021, the trial court entered a consent order granting Kelly's motion to disqualify and directed the Attorney General's office to appoint conflict counsel within 30 days.

On October 19, 2021, at a hearing on the motion for new trial (and nearly six months after the trial court had directed the Attorney General to appoint conflict counsel within 30 days), the assistant district attorney explained that the Attorney General had not been able to find a prosecutor to volunteer to take this case and had not yet appointed conflict counsel for the State.  Although there was no lawyer present at the hearing who could represent the State without conflict, the trial court heard testimony from Kelly and argument from his appellate counsel and asked counsel to "prepare" for the court "an order giving the State 30 days . . . if they want to file for a motion for a rehearing," and "if we don't hear anything from the State during that period of time, then . . . prepare an order granting [Kelly's] motion for new trial based on ineffective assistance of counsel."  One week later, on October 26, 2021, the trial

3

court entered an order, apparently drafted by Kelly's appellate counsel, granting Kelly's motion for new trial based on ineffective assistance of counsel and providing that "[t]he State is specially allowed to request a re-hearing on the motion within thirty days from the filing of this order."

The Attorney General then appointed a district attorney pro tempore, who filed an entry of appearance on November 3, 2021. A new term of court began on Monday, November 15, 2021. See OCGA § 15-6-3 (5) (B) (providing that the terms of court for the Superior Court of Richmond County commence on the "[t]hird Monday in January, March, May, July, September, and November"). On November 23, 2021—eight days after the new term of court began but within 30 days of the October 26, 2021 order—the State filed a single-page request for a rehearing on Kelly's motion for new trial.[3]

---

[3] The record does not show, and the State does not claim, that the order granting the motion for new trial was ever vacated or set aside, or that the State ever filed a notice of appeal from the trial court's order granting a new trial, as authorized by OCGA § 5-7-1 (a) (8) ("An appeal may be taken by and on behalf of the State of Georgia from the superior courts . . . in criminal cases . . . [f]rom an order, decision, or judgment of a court granting a motion for new

4

On December 21, 2021, Kelly's appellate counsel filed a brief arguing that the trial court had lost jurisdiction to reconsider its order granting Kelly's motion for new trial.[4] And at a hearing held that same day, appellate counsel argued that the trial court had lost jurisdiction to reconsider the motion for new trial it had already granted Kelly because, among other reasons, the State's request for a rehearing was filed after the term of court had expired. The trial court took that matter "under advisement" and "reserve[d its] ruling," but orally granted the district attorney's request for rehearing, reopened the hearing on Kelly's motion for new trial, and heard additional testimony and argument from both parties on the substance of the motion.

After both parties filed briefs on the jurisdictional issue and the State filed a substantive "opposition" to Kelly's amended motion for new trial, the trial court entered an order on January 25, 2022,

---

trial . . . .").

[4] An hour later on the same day, appellate counsel also filed an amended motion for new trial that raised additional grounds.

denying Kelly's amended motion for new trial and explaining only that it "adopt[ed] the reasoning and law set forth in the State's brief in opposition to the Motion for New Trial." The trial court did not address the jurisdictional issue Kelly had raised and did not specifically address or evaluate any of Kelly's claims. Kelly timely filed a notice of appeal from the trial court's denial of his amended motion for new trial.[5]

2. On appeal, Kelly contends that the trial court was without jurisdiction to consider the State's request for a rehearing because it was filed outside the term of court. We agree.

Generally speaking, a trial court "has the inherent power during the same term of court in which the judgment was rendered to revise, correct, revoke, modify or vacate the judgment, even upon its own motion." *Barlow v. State*, 279 Ga. 870, 872 (621 SE2d 438) (2005). But "such authority generally does not extend beyond the same term of court, unless a motion to modify, or vacate, or the like

---

[5] Kelly later amended his notice of appeal, and the case was docketed in this Court to the August 2022 term and submitted for a decision on the briefs.

6

was filed within the same term of court." Id. "In civil cases, an interlocutory ruling does not pass from the control of the court at the end of the term if the cause remains pending." *Moon v. State*, 287 Ga. 304, 304 (696 SE2d 55) (2010) (citations and punctuation omitted). In criminal cases, however, "a trial court's inherent power to revoke interlocutory rulings [ ] ceases with the end of the term" unless a motion for reconsideration is filed during the same term as the ruling at issue. Id. (citing *Pledger v. State*, 193 Ga. App. 588, 589 (388 SE2d 425) (1989), which held that a trial court's inherent power in a criminal case to vacate the grant of a new trial and reinstate the judgment of conviction expired at the end of the term, and noted that a court's inherent power "during, but not beyond, the term . . . as to criminal cases has not been modified by statute, as have those cases civil in nature"). See also *Moon*, 287 Ga. at 305-309 (Nahmias, J., concurring) (explaining that this rule "makes sense" when applied to final judgments in criminal and civil cases, "seems outdated" in the context of interlocutory orders in criminal cases, can be revised only by the General Assembly and not through

7

judicial decision, and does not preclude "after-term reconsideration, at least of constitutional issues, where the 'evidentiary posture' of the issue has changed").

The State properly concedes that it "has no credible way to challenge" the "long-standing maxim" from *Barlow* articulated above. In other words, the State does not dispute that, in a criminal case, a trial court generally loses its inherent power to revise, correct, revoke, modify, or vacate its judgment at the end of the term of court in which it renders that judgment. And citing *Moon*, it further concedes, as it must, that "the expiration of a court term supersedes any language in a court's order granting a party time to file a motion for reconsideration" and that such language in the trial court's order granting a new trial in this case "could not extend the trial court's authority to reconsider Kelly's motion for new trial" and indeed "had no effect on whether it lost jurisdiction to reconsider its order after the end of the September court term." See *Moon*, 287 Ga. at 304-305 (applying the rule against out-of-term reconsideration to an order granting a change of venue where the trial court "stated

8

that the State could file a motion to reconsider, and ordered the parties either to agree on a proper venue or to bring the matter back by motion for the court to determine a proper venue," holding that an order granting an out-of-term motion for reconsideration was a "nullity," and directing the trial court "to reinstate its order changing venue"). See also *Long v. Long*, 247 Ga. 624, 625 (278 SE2d 370) (1981) (where the trial court's final order stated that "each party may file objections to this order during the next 30 days," and appellant did so but the term of court had expired by that time, the trial court "no longer had jurisdiction of the matter," and because no notice of appeal was filed within 30 days of that order, the appeal from a later order purporting to affirm the final order had to be dismissed for lack of jurisdiction). Thus, the trial court's order denying Kelly's motion for new trial was a nullity and must be vacated.

3. Though it largely accepts this reality, the State nonetheless argues that the trial court's initial order granting Kelly's motion for new trial must be vacated because it was "null and void for failure

9

to comply with due process and fundamental fairness." The State offers several lines of reasoning to support its contention that "[t]he process by which the trial court issued its October 26 order was fundamentally unfair" and that the order was therefore void: that the initial hearing on Kelly's motion for new trial was held over both parties' objections and the hearing and order were "functionally ex parte"; that the written order did not reflect the trial court's oral ruling, and in fact reflected "nearly the opposite"; that the order was drafted by Kelly's counsel and adopted by the trial court without giving the State an opportunity to respond; and that the State's failure to appeal directly from the trial court's written order "was dictated by circumstances beyond the State's control." However, as explained more below, many of the State's contentions boil down to a faulty premise that the State had due process rights in the course of Kelly's motion-for-new-trial proceedings, and fail because of an unavailing argument that those supposed rights were violated. Other of its arguments also fail for reasons that follow.

10

The State does not expressly assert that it has constitutional due process rights that the trial court violated during Kelly's initial motion-for-new-trial proceedings—but that notion is the common thread that runs through each of its arguments. For example, the State argues that the "concepts of fundamental fairness and due process cannot be one-sided."[6] Similarly, in contending that Kelly's initial motion-for-new-trial proceedings were "functionally ex parte" and that it had no "opportunity to address Kelly's motion for new

---

[6] Although the State admits that "it is a rare case in which these concepts may be said to apply to the State in a criminal prosecution," it offers no example—not even a "rare" one—of due process applying to the State under such circumstances. The only case that the State cites in support of this idea, *Prater v. State*, 222 Ga. App. 486, 488 (474 SE2d 684) (1996), is based on a statutory notice requirement that is not relevant to this case; *Prater* does not mention due process, fundamental fairness, or any other constitutional principle. *Prater* therefore does not support the State's argument that it has a due-process right in this criminal case. Moreover, *Prater* is distinguishable because it did not involve a judicial response, like the trial court's here, to a party's prolonged failure to secure qualified counsel, even after the trial court directed the party to appoint counsel within a specified time period that had long since passed. Cf. *Allen v. Daker*, 311 Ga. 485, 497-498, 499-500 (858 SE2d 731) (2021) (a trial court is permitted to find that even a non-indigent criminal defendant, who unlike the State has a constitutional right to counsel, has functionally waived that right by failing "to act diligently to secure counsel," so long as the trial court determined whether the defendant acted with reasonable diligence and whether the absence of counsel was beyond his control).

11

trial," the State emphasized that the "cornerstone of due process and fundamental fairness" is "notice and opportunity to be heard" and cited *Mathews v. Eldridge*, 424 U.S. 319, 334 (96 SCt 893, 47 LE2d 18) (1976), and *Hood v. Carsten*, 267 Ga. 579, 580 (481 SE2d 525) (1997)—both cases pertaining to procedural due process under the United States Constitution. Likewise, the State's arguments that Kelly's counsel "alone" prepared the draft order the trial court ultimately entered,[7] and that the written order did not reflect the trial court's earlier oral ruling,[8] sound in a due-process analysis this

---

[7] Even assuming, without deciding, "[t]hat the written order was proposed by [opposing] counsel[, this] does not mean that the trial judge did not exercise his discretion regarding its contents." *Mondy v. Magnolia Advanced Materials*, 303 Ga. 764, 773 (815 SE2d 70) (2018) (citing *Brockman v. State*, 292 Ga. 707, 713 (739 SE2d 332) (2013).

[8] We note that there does appear to be a difference between what the trial court asked Kelly's counsel to memorialize in the order and what counsel put in the order—specifically, that the trial court did not say that it was then granting Kelly's motion for new trial, but rather that it would grant the motion if the State did not respond to it within 30 days. Notwithstanding this apparent difference, the trial court signed the proposed order and it therefore became the order of the Court. See *Mondy*, 303 Ga. at 772 ("[U]ntil an oral pronouncement is memorialized, the trial judge has broad discretion to amend, alter, or completely change his decision, and any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment.").

Court has before undertaken when evaluating certain ex parte orders and orders that one party proposes and the trial court adopts. (Citing *State v. Holmes*, 306 Ga. 647 (832 SE2d 777) (2019), for the proposition that such orders "'do not violate due process and should not be vacated unless a party can demonstrate that the process by which the judge arrived at them was fundamentally unfair.'" Id. at 651-652 (citation omitted).)[9] Finally, the State admits that it did not appeal the trial court's order granting Kelly's motion for new trial within the 30 days required by OCGA § 5-7-1, see also OCGA § 5-6-38 (a), but nonetheless contends that because of "circumstances beyond the State's control" related to the timing of conflict counsel, it "would be fundamentally unfair to hold this fact against the State."[10]

It is thus apparent that, to the extent the State's arguments

---

[9] In support of these arguments, the State cites two more cases: *Treadaway v. State*, 308 Ga. 882, 887 (843 SE2d 784) (2020), and *Jefferson v. Upton*, 560 U.S. 284 (130 SCt 2217, 176 LE2d 1032) (2010). But the portion of *Treadaway* that the State cites merely quotes and applies the due-process principles set forth in *Holmes*, and *Jefferson* is factually distinguishable.

[10] In its brief on appeal, the State cites no authority to support this specific contention.

are grounded in any legal authority at all, they are grounded in the constitutional right to procedural due process. See, e.g., U.S. Const. Amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."); U.S. Const. Amend. XIV, Sec. I ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."). See also, e.g., *Mathews*, 424 U.S. at 334; *Hood*, 267 Ga. at 580; *Holmes*, 306 Ga. at 651-652. But the foundation on which the State builds its argument contains a conspicuous crack: its insistence that the State must be "afforded the basic tenets of due process that every criminal defendant and every civil party enjoys." This erroneous premise is fatal to the State's claims.[11] As the United States Supreme Court has explained, "[t]he word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union, and to our

---

[11] The State neither cites nor analyzes any other source of a due process guarantee, such as statutory or decisional law; accordingly, we do not either. Indeed, we address only the contentions that we can glean from the State's briefing, and we do not consider any other potential basis that the State has not raised for vacating the order granting Kelly a new trial.

knowledge this has never been done by any court." *South Carolina v. Katzenbach*, 383 U.S. 301, 323-324 (86 SCt 803, 15 LE2d 769) (1966). See also *State v. Cash*, 298 Ga. 90, 93 (779 SE2d 603) (2015) (citing this portion of *Katzenbach* in support of the holding that the State had no constitutional due process right to appeal an order in a criminal prosecution). Similarly, we are aware of no court, and the State has not cited any, that has expanded the meaning of the word "person" in the Due Process Clause of the Fourteenth Amendment to encompass states. Compare, e.g., *People v. Williams*, 429 NE2d 487, 489 (Ill. 1981) ("The due process clauses of the fifth and fourteenth amendments were enacted to protect 'persons,' not States. . . . It is clear that a State is not a person within the meaning of the fourteenth amendment; thus, the State cannot benefit from the due process protection embodied in that amendment. Indeed, the purpose of the fourteenth amendment is to protect individuals from State action.") (emphasis omitted). Cf. *Bibb County v. Hancock*, 211 Ga. 429, 441 (86 SE2d 511) (1955) (counties and municipal corporations "are not persons as against the State within

15

the meaning of the constitutional provision guaranteeing due process to all persons"). And this makes good sense: the Due Process Clause of the Fourteenth Amendment was not intended to protect the government, but rather "to secure the individual from the arbitrary exercise of the powers of government." *Daniels v. Williams*, 474 U.S. 327, 331 (106 SCt 662, 88 LE2d 662) (1986) (citation and punctuation omitted). See also *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (118 SCt 1708, 140 LE2d 1043) (1998) ("We have emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government.") (citation and punctuation omitted). Accordingly, we reject the State's contention that it was deprived of constitutional due process in Kelly's motion-for-new-trial proceedings.

Because the trial court was without jurisdiction to consider the State's out-of-term request for reconsideration and enter an order denying the motion for new trial, that order must be vacated. And even assuming that the State can challenge the trial court's initial order granting Kelly a new trial without having filed a cross-appeal

16

on that issue, see *Floyd v. Floyd*, 291 Ga. 605, 605 n.1 (732 SE2d 258) (2012) ("[A]n appellee ordinarily must file a cross-appeal to preserve a claim of error, except when the claim of error is material to, and intertwined with, a claim of error properly raised by the appellant."), the State's due-process challenge fails, and the trial court's initial order granting Kelly's motion for new trial remains in effect. The case therefore is remanded for further proceedings pursuant to the order granting Kelly's motion for new trial.

*Judgment vacated and case remanded with direction. All the Justices concur.*

Decided January 18, 2023.

Murder. Richmond Superior Court. Before Judge Overstreet, Senior Judge.

*Barbara Mattes*, for appellant.

*Jared T. Williams, District Attorney, Deborah Gonzalez, District Attorney Pro Tempore, Gerald L. Henderson, Assistant District Attorney; Christopher A. George; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.