312 Ga. 825
FINAL COPY

S21A0840. SCHOICKET v. THE STATE.

PETERSON, Justice.

Rebecca Dawn Schoicket was granted an out-of-time appeal to appeal the judgment of conviction entered on her guilty plea. In addition to challenging her sentence on one count, she argues that the out-of-time appeal she was granted meant that the trial court should have granted her motion for leave to file an otherwise untimely motion to withdraw her guilty plea. Schoicket argues that *Collier v. State*, 307 Ga. 363 (834 SE2d 769) (2019), recognized that it would be a "logical extension" of our case law to permit the filing of such a motion, because we have stated that the grant of an out-of-time appeal starts the post-conviction process "anew." Schoicket is correct in that appraisal of our case law, but we decline to extend it to afford her the relief she seeks.

As the special concurrence to *Collier* explained, this Court ignored contrary precedent and statutes in creating out of whole

cloth the motion for out-of-time appeal in the trial court, see id. at 379 (Peterson, J., concurring specially), which is the procedural vehicle that forms the foundation of the case law on which Schoicket relies. And following our decision in *Collier*, we have retreated from broad statements about the effect of a granted out-of-time appeal in order to avoid dispensing unwarranted windfalls. See *Kelly v. State*, 311 Ga. 827, 830-831 (860 SE2d 740) (2021). A defendant is granted an out-of-time appeal when she shows that her counsel's ineffective assistance frustrated her right to timely appeal by unprofessionally failing to advise her of that right or by failing to file an appeal she desired. Allowing such a grant to then permit the movant to file a motion to withdraw a guilty plea would be an unwarranted windfall with potentially profound consequences for our criminal justice system. Accordingly, we affirm the trial court's denial of Schoicket's motion for leave to pursue such relief. However, because we agree with Schoicket that the sentencing court erred in sentencing as to one count, we vacate that count and remand for resentencing.

The record shows the following. In October 2016, with the

2

assistance of counsel, Schoicket pleaded guilty to felony murder and other charges in Walton County Superior Court.[1] More than a year later, in December 2017, Schoicket filed a pro se motion for an out-of-time appeal. She subsequently amended that motion and also filed a pro se motion to withdraw her guilty plea. After being appointed new counsel, Schoicket moved for leave to file a motion to withdraw her guilty plea. Following a hearing, the trial court granted Schoicket's motion for an out-of-time appeal, but denied the motion for leave. Despite that ruling, Schoicket's counsel filed a motion to withdraw the guilty plea the day after the hearing. Schoicket now appeals from the trial court's denial of her motion for leave to file a motion to withdraw her plea.[2]

1. Schoicket argues that the trial court erred in denying her motion for leave to file a motion to withdraw her guilty plea because

---

[1] Schoicket was charged with malice murder (Count 1), aggravated assault (Count 2), felony murder (Count 3), possession of a firearm during the commission of a felony (Counts 4, 5, and 6), tampering with evidence (Count 7), and possession of methamphetamine (Count 8). Schoicket pleaded guilty to Counts 3, 6, 7, and 8 and was sentenced to life plus five years in prison.

[2] Schoicket filed the motion to withdraw her guilty plea and, one minute later, filed a notice of appeal from the judgment of conviction and the order denying leave to file a motion to withdraw the guilty plea.

the granted out-of-time appeal permitted her to start the post-conviction process "anew." She relies on certain statements in our prior decisions, including one in the special concurrence in *Collier* that "a logical extension of" prior statements of this Court would be that a granted out-of-time appeal authorizes the filing of a motion to withdraw a guilty plea. See *Collier*, 307 Ga. at 380 (Peterson, J., concurring specially). We agree that permitting such a motion would be a logical extension of our precedent that invented certain post-conviction remedies. Although we should not have invented those remedies in the first place, we decline to invent additional remedies that might further complicate our post-conviction jurisprudence.

We begin with a little background. The traditional rule is that motions to withdraw a guilty plea must be filed in the term of court in which the defendant was sentenced, see *Brooks v. State*, 301 Ga. 748, 751 (2) (804 SE2d 1) (2017), the time period under the common law during which trial courts could generally reconsider their judgments, see *Moon v. State*, 287 Ga. 304, 305-306 (696 SE2d 55) (2010) (Nahmias, J., concurring). This well-established rule is

merely the application of a bedrock common-law principle that applies equally to other criminal motions and in civil cases. See *Gray v. State*, 310 Ga. 259, 263 (3) (850 SE2d 36) (2020) (common-law rule, which Georgia courts have long applied, provides that "in the absence of a statute providing otherwise, the general principle obtains that a court cannot set aside or alter its final judgment after the expiration of the term at which it was entered, unless the proceeding for that purpose was begun during that term" (citation, punctuation, and emphasis omitted)); see also *Smith v. State*, 298 Ga. 487, 487-488 (782 SE2d 17) (2016) (rule applicable even if motion construed as motion to withdraw guilty plea or motion for arrest of judgment); *Tremble v. Tremble*, 288 Ga. 666, 668 (1) (706 SE2d 453) (2011) (applying rule to second divorce decree entered after expiration of term of court in which first decree was entered). This common-law rule, as applied to motions to withdraw guilty pleas, remains in force today. See *Gray*, 310 Ga. at 262 (2) (common-law rules remain in effect "except where they have changed by express statutory enactment or by necessary implication" (citation

and punctuation omitted)).

When a defendant seeks to withdraw her guilty plea after the expiration of that term of court, she must pursue such relief through habeas corpus proceedings. See *Davis v. State*, 274 Ga. 865, 865 (561 SE2d 119) (2002). Applying this traditional rule, Schoicket's motion to withdraw her guilty plea, as a standalone motion, would be barred as untimely because it is undisputed that she sought to file it more than a year after the term of court in which the judgment of conviction was entered. See OCGA § 15-6-3 (2) (B) (the terms of court for the Superior Court of Walton County commence on the "[f]irst and second Mondays in February, May, August, and November").

Schoicket argues that she is permitted to file her otherwise untimely motion because the grant of an out-of-time appeal essentially restarted the post-conviction process. Her arguments are rooted in statements made in *Ponder v. State*, 260 Ga. 840 (400 SE2d 922) (1991), and *Maxwell v. State*, 262 Ga. 541 (422 SE2d 543) (1992). But we already have begun to trim back those broad statements.

*Ponder* is the primary case for expanding the record upon the grant of an out-of-time appeal in order to consider previously unraised claims. There, we held that a defendant who is granted an out-of-time appeal should be allowed to file a motion for new trial in order to raise ineffectiveness claims against trial counsel for the first time. See 260 Ga. at 840-841 (1). This Court explained that the grant of an out-of-time appeal

> should be seen as permission to pursue the post-conviction remedies which would be available at the same time as a direct appeal . . . and constitutes permission to pursue appropriate post-conviction remedies, including a motion for new trial.

Id. at 841 (1). We note, however, that even by its own terms, *Ponder* authorized only "appropriate" post-conviction remedies.

In *Maxwell*, we extended *Ponder* to allow a defendant to pursue a second motion for new trial with appellate counsel despite the fact that the defendant's first motion for new trial, filed by trial counsel, had been denied. See *Maxwell*, 262 Ga. at 542-543 (3), disapproved by *Kelly*, 311 Ga. at 830-831. We stated in *Maxwell* that the second motion for new trial was permitted because the grant of an out-of-

7

time appeal "start[s] the post-conviction process anew." Id. at 542-543 (3). Allowing a second motion for new trial in *Maxwell* was an "appropriate" remedy because trial counsel could not have been expected to raise ineffectiveness claims against himself in the first motion for new trial. See *Garland v. State*, 283 Ga. 201, 203 (657 SE2d 842) (2008); see also *Hood v. State*, 282 Ga. 462, 463 (651 SE2d 88) (2007) ("[A] lawyer may not ethically present a claim that [the lawyer] provided a client with ineffective assistance of counsel[.]"). We readily acknowledge that our statements in *Ponder* and *Maxwell* would naturally lead to the conclusion that, upon the grant of an out-of-time appeal, a defendant who pleaded guilty should be able to file a motion to withdraw that plea, just as a defendant who went to trial can file a motion for new trial.[3]

---

[3] We also acknowledge another line of case law that has afforded similar remedies on direct appeal. See, e.g., *Davis v. State*, 301 Ga. 658, 659 (802 SE2d 246) (2017) (reversing denial of timely motion to withdraw guilty plea and remanding for hearing on claim that plea counsel was ineffective); *Gooden v. State*, 305 Ga. 835, 838 (828 SE2d 302) (2019) (affirming denial of timely motion to withdraw guilty plea and rejecting claim for remand based on plea counsel's alleged ineffectiveness, as issue already had been adjudicated by the trial court). But this case presents only the question of what remedy is available through the procedural vehicle of a granted motion for out-of-time

But in *Kelly* we retreated from what *Ponder* and *Maxwell* said, holding that the grant of an out-of-time appeal does not actually start the post-conviction process "anew"; instead, it merely "restore[s] the defendant to the position he occupied at the time he forfeited his right to appeal (or seek other post-conviction relief)." *Kelly*, 311 Ga. at 830-831. And as Justice Warren recognized in *Kelly*, and as *Ponder*'s core holding teaches us, remedies for ineffective assistance of counsel should be tailored to the particular violation. See *Kelly*, 311 Ga. at 833 (Warren, J., concurring specially) ("[T]he remedy this Court provided in *Maxwell* was too broad because it exceeded that which was required to remedy the deprivation of Maxwell's appellate rights because of an alleged constitutional violation (i.e., ineffective assistance of counsel)."); *Ponder*, 260 Ga. at 842 (2) (allowing motion for new trial to be filed upon grant of out-of-time appeal because appellate counsel did not have the opportunity to raise ineffectiveness claims against trial

appeal, not whether other remedies are ever available in other procedural postures.

9

counsel until after the time for an appeal had passed). Any suggestion now that the grant of an out-of-time appeal starts the post-conviction process completely "anew" fails to recognize our holding in *Kelly*, which narrowed *Ponder* to avoid dispensing unwarranted windfalls to would-be appellants.[4] And the imprecise statement in *Maxwell* that the grant of an out-of-time appeal "start[s] the post-conviction process anew," if applied beyond the context of that case, ignores *Ponder*'s teaching that only "appropriate" remedies are available upon the grant of a motion for out-of-time appeal.

Such a windfall would arise from allowing a defendant to file an otherwise untimely motion to withdraw a guilty plea simply because she was granted an out-of-time appeal. As discussed above, longstanding precedent dictates that a defendant seeking to withdraw a guilty plea after the expiration of the term of court in

---

[4] Justice Ellington's dissent also points to language repeated in a number of our decisions that the grant of an out-of-time appeal is the "functional equivalent of the entry of a judgment." That statement originates in *Fairclough v. State*, 276 Ga. 602 (581 SE2d 3) (2003), and is based on an assessment of *Maxwell*'s overbroad "anew" language. See *Fairclough*, 276 Ga. at 603 (1).

which she was sentenced can do so only in habeas. See *Davis*, 274 Ga. at 865. And because of this precedent, Georgia does not recognize untimely standalone motions to withdraw a guilty plea. Indeed, we have explicitly rejected efforts to file motions for out-of-time withdrawal of guilty pleas, notwithstanding that we allow motions for out-of-time appeals. See, e.g., *Sims v. State*, 312 Ga. \_\_\_, \_\_\_ n.5 (862 SE2d 507) (2021) (citing *Brooks*, 301 Ga. at 751 (2) n.7, and *Foster v. State*, 294 Ga. 400, 401 (754 SE2d 78) (2014)).[5] It would

---

[5] Justice Ellington's dissent relies on *Gude v. State*, 229 Ga. 831 (194 SE2d 445) (1972), for the proposition that we have created a standalone, untimely motion to withdraw because we considered the merits of an appeal from such a motion. But *Gude* does not support this proposition. First, this Court in *Gude* merely affirmed the denial of an untimely motion to withdraw, but we did not consider whether such motions were appropriate at all, and so *Gude* contains no holding as to whether such motions are allowed. See *Seals v. State*, 311 Ga. 739, 745-746 (2) (b) (860 SE2d 419) (2021) ("Decisions of this Court . . . do not stand for points that were neither raised by the parties nor actually decided in the resulting opinion[.]" (citation and punctuation omitted)). Second, we have since clearly held that we will vacate orders that consider the merits of untimely motions because a trial court lacks jurisdiction to decide such motions. See *Brooks*, 301 Ga. at 752 (2). Third, even if *Gude* could be read as having permitted untimely motions to withdraw a guilty plea, that holding was effectively overruled by our more recent decisions holding otherwise. See *White v. State*, 305 Ga. 111, 122 n.10 (823 SE2d 794) (2019) ("When a high court finds discordant opinions among its own . . . precedents the court generally follows its decision in the most *recent* case, which must have tacitly overruled any truly inconsistent holding." (citation and punctuation omitted; emphasis in original)).

11

be strange indeed to prohibit a standalone motion for out-of-time withdrawal of a guilty plea — and direct such a movant to habeas — but then allow precisely the same remedy to another defendant based purely on a demonstration that her separate right to appeal had been frustrated.

For decades now, our post-conviction jurisprudence has been described as a "tangle" of "confusing" procedural rules. See *Maxwell*, 262 Ga. at 543 (Fletcher, J., concurring in part). To untangle it ourselves would be difficult and seemingly disruptive to the system that has developed around it,[6] and we are not called upon in this

---

[6] This certainly is true as to our precedent requiring Sixth Amendment claims of ineffective assistance of counsel to be raised on direct appeal. As we discuss briefly below, the criminal justice system has in many ways organized itself around that precedent, and overruling it would be very disruptive. It seems unlikely, however, that eliminating the motion for out-of-time appeal would pose the risk of similar disruption. Unlike the requirement to assert claims of ineffectiveness on direct appeal, motions for out-of-time appeal have had less effect on the structure and funding of the public defender system; indeed, much of the mess that we have created in this area might be mitigated by eliminating that procedural vehicle, and considerations of stare decisis might well counsel in favor of doing so. But this case does not present the question of whether our precedent creating motions for out-of-time appeal should be overruled, however, because this is not an appeal challenging the disposition of such a motion, and so we leave that question for a future case.

case to begin to sort out that mess. That we are not doing so today, however, does not require us to add to that mess. And to rule in Schoicket's favor would make the mess far worse; all defined limits on when a defendant could file a motion to withdraw a guilty plea would be erased.[7] A defendant who pleaded guilty long ago and changed her mind after many years in prison might be able to challenge the voluntariness of a plea if she can show that her right to an appeal was frustrated by her plea counsel.[8]

And if that were allowed, the burden would then shift onto the State to prove the voluntariness of a very old plea when it would

---

[7] In *Collier*, the majority opinion suggested that laches or other equitable doctrines might apply to bar claims brought so late that the delay prejudiced the State. See 307 Ga. at 373-376 (2). The four-justice special concurrence declined to join that suggestion as "tinker[ing] at the margins" with things we had made up, and acknowledged merely that "none of our cases have held that the State cannot assert a defense of prejudicial delay." Id. at 379, 382 (Peterson, J., concurring specially). We leave anything further on this question for another day.

[8] Ironically, *Ponder* defended its holding as bringing finality far sooner than a habeas proceeding would, because an ineffectiveness claim could "be promptly resolved by the judge who presided over the trial as opposed to having it resolved by a habeas corpus court somewhere down the road." *Ponder*, 260 Ga. at 842 (1) (citation and punctuation omitted). But the creation of a standalone procedural vehicle that might be filed long after a habeas petition has become untimely is a strange way to achieve finality.

otherwise be on the defendant. See *Kennedy v. Hines*, 305 Ga. 7, 9 (2) & n.2 (823 SE2d 306) (2019) (while habeas petitioner bears the burden of proving that her guilty plea was not "voluntary, knowing, and intelligent," the State has the burden to prove voluntariness on direct appeal). Given that the passage of years can result in records lost or destroyed, and witnesses may forget, move, or die, the State may not be able to make this showing even when a plea was voluntary, knowing, and intelligent. And if the State fails to do so (and some sort of laches principle is deemed not to apply), the defendant will win an argument she would otherwise lose (and indeed might not be able to raise due to the applicable statute of limitations, see OCGA § 9-14-42 (c)) in habeas. Worse still, the passage of many years could then make it virtually impossible for the State to try the defendant before a jury. This would result in windfall upon windfall for the defendant.

To be sure, there are competing concerns involved in post-conviction relief procedures — addressing violations of a defendant's constitutional rights on the one hand, and ensuring finality on the

other. But the General Assembly has enacted habeas statutes balancing these competing concerns. See OCGA § 9-14-42 (a), (c) (habeas petition alleging that felony conviction involved "substantial denial" of constitutional rights must be brought within four years). We lack the authority to substitute our policy preferences for those of the General Assembly and thereby allow a defendant to skirt the legislatively established process. Cf. *Duke v. State*, 306 Ga. 171, 186 (4) (829 SE2d 348) (2019) (overruling a judicially created rule altering the legislature's jurisdictional requirements for interlocutory appeals); *State v. Orr*, 305 Ga. 729, 735-736 (2) (827 SE2d 892) (2019) (concluding that evidentiary exclusion rule, created by this Court with dubious authority and based on "the Court's view of good policy," was abrogated by the legislature's enactment of the new Evidence Code); see also *Love v. State*, 309 Ga. 833, 842 (4) (848 SE2d 882) (2020) ("[Policy] considerations are best left to be weighed by our General Assembly.").

The dissents argue that our prior holdings support the creation

of this additional remedy, but they point only to *statements* in those cases that were not essential to the holdings. See, e.g., *Maxwell*, 262 Ga. at 542-543 (3).

> It is, of course, axiomatic that a decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises. Language that sounds like a holding — but actually exceeds the scope of the case's factual context — is not a holding no matter how much it sounds like one.

*Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 337 Ga. App. 340, 340 n.1 (788 SE2d 74) (2016) (citation and punctuation omitted). Our recent cases have reaffirmed *Ponder*'s teaching that only "appropriate" remedies should be granted upon a showing of constitutionally ineffective counsel, yet the dissents' approach is not tailored to remedying the ineffective assistance that frustrated Schoicket's right to appeal in the first place. This is not how the United States Supreme Court tells us to remedy Sixth Amendment violations. See *United States v. Morrison*, 449 U.S. 361, 364 (101 SCt 665, 66 LE2d 564) (1981) ("Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and

16

should not unnecessarily infringe on competing interests.").

The dissents correctly point out that, in departing from the holding of *Neal v. State*, 232 Ga. 96 (205 SE2d 284) (1974), we made the policy decision to create a new out-of-time appeal procedural vehicle, and that we elected in *Collier* to leave that vehicle in place. But the dissents go astray in suggesting that this means we must necessarily continue making up new policy so long as it follows logically from the policy we've already created. The criminal justice system — and especially the structure of our public defender system — has evolved over time to comply with the requirements we have created. The General Assembly has appropriated substantial funds to make that system work. That we did not in *Collier* undo all of this does not mean that we should keep inventing new requirements for the legal system to comply with.

The dissents argue that we should continue trail-blazing because our invented remedy should be made available in an even-handed manner to trial-convicted and plea-convicted defendants alike. But where do we stop? The dissents do not say. And our

inventions have never purported to be even-handed; a motion for out-of-time appeal can be granted only if one particular kind of ineffective assistance of counsel claim succeeds, and all sorts of other ineffectiveness claims not raised on direct appeal can be brought only in habeas.

For these reasons, we hold today that a granted motion for out-of-time appeal does not confer a right to file an otherwise-untimely motion to withdraw a guilty plea. As a result, we conclude that the trial court did not err in denying Schoicket's motion for leave.[9] We therefore deny her request to remand this case for consideration of the merits of her motion to withdraw. Her remedy, if any, lies in

---

[9] We hereby overrule decisions of the Court of Appeals that suggested — very reasonably at the time, given the statements in *Ponder* and *Maxwell* — that a defendant could file a motion to withdraw a guilty plea upon the grant of an out-of-time appeal. See *Sosa v. State*, 352 Ga. App. 637, 639 (2) & n.1 (835 SE2d 695) (2019) (vacating denial of motion for out-of-time appeal, remanding for proceedings consistent with *Collier*, and noting that if defendant "is successful on remand in obtaining an out-of-time appeal, he may be able to challenge the voluntariness of his plea in that proceeding"); *Dawson v. State*, 302 Ga. App. 842, 843 (691 SE2d 886) (2010) (concluding that defendant had to file second motion to withdraw guilty plea following grant of out-of-time appeal from denial of first motion to do so in order to claim that post-conviction counsel was ineffective for failing to raise trial counsel's ineffectiveness in first motion to withdraw).

18

habeas corpus.[10]

2. Schoicket argues that she should not have received a 10-year sentence, running concurrently to the life sentence on the murder count, for tampering with evidence (Count 7), because that count was a misdemeanor. The State concedes this error, which is properly raised on appeal of a conviction, and our review of the record confirms the parties' contentions.

Count 7 charged Schoicket, as the accused, with knowingly concealing a pistol with the "intent to obstruct the prosecution of said accused." Because she was found guilty of tampering with evidence in her own case, she was guilty only of a misdemeanor and should not have received a 10-year sentence. See OCGA § 16-10-94 (a), (c); see also *Byers v. State*, 311 Ga. 259, 268 (3) (857 SE2d 447) (2021) ("A person who tampers with evidence of [her] own crime is guilty of only a misdemeanor."); *White v. State*, 287 Ga. 713, 717 (1)

---

[10] Justice Ellington's dissent closes with the thoughtful suggestion that the Council of Superior Court Judges consider adopting a new Uniform Superior Court Rule requiring as part of a plea colloquy that the judge accepting the plea inform the defendant of the various requirements for plea withdrawal and appeal. We agree that such a rule merits consideration.

(d) (699 SE2d 291) (2010) (felony sentence is permitted only when a person tampers with evidence involving apprehension or prosecution of a person other than himself). Accordingly, we vacate the sentence on Count 7 and remand for resentencing on it.

*Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur, except Ellington and Colvin, JJ., who dissent as to Division 1.*

ELLINGTON, Justice, dissenting in part.

In his special concurrence in *Collier v. State*, Justice Peterson posited that it "would appear to be merely a logical extension of statements we have previously made" to hold that "a granted motion for out-of-time appeal from a guilty plea authorizes not only an appeal but also a motion to withdraw the guilty plea[.]"[11] I agree, although we stopped short of saying so in the majority opinion in *Collier* because the issue was not then before the Court. Indeed, I would go further and say that such a holding is the logical result, not merely of some of our prior *statements*, but of our prior *holdings*, which involved the application of federal and state constitutional law and state statutory law. Now that the issue is squarely presented for our decision, the majority arbitrarily declines to extend to guilty-plea convictions the practice that has long been available for trial convictions — that a granted out-of-time appeal constitutes permission, not just to proceed directly to review by an appellate court, but to start the post-conviction process anew in the

---

[11] *Collier v. State*, 307 Ga. 363, 380 (834 SE2d 769) (2019) (Peterson, J., concurring specially).

21

court of conviction. In light of the underlying principles concerning post-conviction remedies, there is no reasonable basis on which to treat guilty-plea defendants differently from similarly situated trial-convicted defendants. I therefore respectfully dissent as to Division 1 of the majority opinion.

Under Georgia law, a criminal defendant has an unqualified right to appeal directly from a judgment entered on a guilty plea.[12] Compliance with the statutory deadline for filing a notice of appeal is required to confer jurisdiction on an appellate court.[13] Upon a finding by the trial court of the county of a prisoner's current confinement (the habeas court) that the prisoner's right to a direct

---

[12] See *Ringold v. State*, 309 Ga. 443, 446 n.3 (847 SE2d 181) (2020); *Collier*, 307 Ga. at 367-369 (1); see also *Rodriquez v. United States*, 395 U. S. 327 (89 SCt 1715, 23 LE2d 340) (1969).

[13] See OCGA §§ 5-6-38 (a) (A notice of appeal must be filed within 30 days after entry of the appealable decision or judgment complained of, or within 30 days after the entry of an order granting, overruling, or otherwise finally disposing of a timely-filed motion for new trial, a motion in arrest of judgment, or a motion for judgment notwithstanding the verdict.); 5-6-39 (Provided an application for an extension of time to file a notice of appeal is filed before the time for filing the notice of appeal expires, the court may grant a single extension of no more than 30 days.); *Kelly v. State*, 311 Ga. 827, 828 (860 SE2d 740) (2021); *Collier*, 307 Ga. at 371 (2); *Gable v. State*, 290 Ga. 81, 83 (2) (a) (720 SE2d 170) (2011).

appeal was frustrated by the ineffective assistance of counsel, the habeas court may allow an out-of-time appeal under the Habeas Corpus Act of 1967, OCGA § 9-14-40 et seq.[14] In 1974, this Court held that the Act

> provided an adequate post-conviction remedy to a prisoner seeking relief upon a claim arising from the substantial denial of rights guaranteed by the Federal or State Constitutions or by the statute laws of the state, including, . . . the denial of the right of appeal or of the effective assistance of counsel on appeal.

*Neal v. State*, 232 Ga. 96, 96 (205 SE2d 284) (1974) (citations omitted).[15]

---

[14] See *Dos Santos v. State*, 307 Ga. 151, 159 (5) (834 SE2d 733) (2019).

[15] Originally, the Code section providing the grounds for habeas relief provided:

> Any person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Georgia or the laws of the State of Georgia may institute a proceeding under this section.

As we observed in *Collier*, for decades we have allowed an alternative method to co-exist for a defendant to obtain an out-of-time appeal from a judgment of conviction, despite the principle that "courts have no authority to create equitable exceptions to jurisdictional requirements imposed by statute." *Collier v. State*, 307 Ga. 363, 371 (1) (834 SE2d 769) (2019), quoting *Gable v. State*, 290 Ga. 81, 85 (2) (b) (720 SE2d 170) (2011) (citation and punctuation omitted). While at times questioning the propriety of doing so, we allowed this alternative track, which proceeds in the trial court where the defendant was tried and sentenced and which, like the habeas track, excuses a defendant's failure to timely file a

Ga. L. 1967, p. 835, § 3. See Ga. Code of 1933, § 50-127. In 1982, the Code section was amended, eliminating the provision for raising denials of rights under Georgia's statutory laws. See Ga. L. 1982, p. 786, §§ 1, 3 ("Any person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of this State may institute a proceeding under this article."); *Parker v. Abernathy*, 253 Ga. 673, 673 (324 SE2d 191) (1985). The relevant Code section now provides: "Any person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of this state may institute a proceeding under this article." OCGA § 9-14-42 (a).

24

notice of appeal, because the required finding — that the defendant's right to a direct appeal was frustrated by the ineffective assistance of counsel — is "a violation of constitutional magnitude." *Collier*, 307 Ga. at 371 (2).

We have consistently deemed the grant of an out-of-time appeal to be "the functional equivalent of the entry of a judgment," even after three Justices joined in Justice Peterson's special concurrence in *Collier*, questioning whether the out-of-time appeal process should be maintained. *Pounds v. State*, 309 Ga. 376, 379(2) (b) n.5 (846 SE2d 48) (2020).[16] Because the time allowed to initiate post-conviction proceedings begins to run when a judgment of conviction is entered, the grant of an out-of-time appeal, as the functional equivalent of the entry of the judgment, serves to "reset"

---

[16] See also *Moore v. State*, 303 Ga. 743, 745 (814 SE2d 676) (2018) (The grant or denial of a motion for out-of-time appeal is the functional equivalent of the entry of a judgment.); *Berrien v. State*, 300 Ga. 489, 491 (1) n.2 (796 SE2d 718) (2017) (The grant of a motion for out-of-time appeal is the functional equivalent of the entry of a judgment.); *Cody v. State*, 277 Ga. 553, 553 n.1 (592 SE2d 419) (2004) (same); *Fairclough v. State*, 276 Ga. 602, 603 (1) (581 SE2d 3) (2003) (same).

25

the trigger date for the time allowed for post-conviction proceedings. See id. at 379 (2) (b); *Lay v. State*, 305 Ga. 715, 715 n.1 (827 SE2d 671) (2019). That is why we have said that the grant of an out-of-time appeal permits a defendant to start the post-conviction process anew.[17] From our earliest cases on this issue, permission to file an out-of-time appeal included permission to file a motion for a new trial.[18] The defendant's motion for a new trial

---

[17] The majority opinion concludes that many of these "statements" of principles did not constitute "holdings" in that they were not strictly limited to the scope of the factual context of the cases being decided and the issues that such context necessarily raised. Maj. Op. at 831-832. Much of the system that has built up around our post-conviction jurisprudence was generated by such extra-contextual statements by us, as opposed to being mandated by our technical holdings. As is demonstrated by the transcripts of the hearings in this case, trial courts and officers of the court often believe themselves to be bound by such statements of principle by this, the highest court in Georgia. It is unreasonable to expect them to heed only the most limited technical holdings in our decisions.

[18] See *Furgerson v. State*, 234 Ga. 594, 595-597 (2) (216 SE2d 845) (1975) (The defendant "filed his pro se motion for out of time appeal [in the trial court], counsel was appointed, the motion was granted, a motion for new trial and an amendment thereto were filed and overruled, and this appeal followed."); see also *Maxwell v. State*, 262 Ga. 541, 542-543 (3) (422 SE2d 543) (1992) (A granted out-of-time appeal "permits a defendant, by the grace of the court, to start the post-conviction process anew." (footnote omitted)), disapproved of by *Kelly*, 311 Ga. at 831; *Ponder v. State*, 260 Ga. 840, 841 (1) (400 SE2d 922) (1991) ("[T]he scope of the permission given when an out-of-time appeal is granted must be broader" than "only permission to file a direct appeal to an appellate court and not any form of post-conviction relief from the lower court itself. . . . [T]he grant of an out-of-time appeal constitutes permission to pursue

did not need to address trial counsel's ineffective assistance in the failure to perfect an appeal that the defendant desired to pursue, because the trial court necessarily made that determination in granting the request for an out-of-time appeal. A motion for a new trial filed after a defendant was granted an out-of-time appeal could address other aspects of the effectiveness of trial counsel. Moreover, the defendant could raise issues as diverse as asking the trial court to weigh the evidence as the "13th juror";[19] to consider questions of alleged prosecutorial misconduct in discovery;[20] to consider questions of improper communications with jurors;[21] etc.

Now we are tasked with deciding whether, in the case of guilty-plea convictions, permission for the defendant "to start the post-

appropriate post-conviction remedies, including a motion for new trial."), disapproved of by *Kelly v. State*, 311 Ga. at 831.

[19] See OCGA §§ 5-5-20; 5-5-21; *Felts v. State*, 311 Ga. 547, 550 n.6 (858 SE2d 708) (2021); *Holmes v. State*, 306 Ga. 524, 527-528 (2) (832 SE2d 392) (2019).

[20] See *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963); *Mitchell v. State*, 307 Ga. 855, 860-863 (2) (b) (838 SE2d 847) (2020); *Hall v. State*, 286 Ga. 358, 360-361 (3) (687 SE2d 819) (2010).

[21] See *Turner v. Louisiana*, 379 U. S. 466, 473-474 (85 SCt 546, 13 LE2d 424) (1965); *Radford v. State*, 263 Ga. 47, 48-50 (426 SE2d 868) (1993).

conviction process anew" includes the right to move to withdraw the defendant's guilty plea. That is, is there a second track in the court of conviction for obtaining out-of-time post-conviction relief from a guilty plea, in addition to the habeas track available in the court of confinement?[22] The majority opinion says, "no." Certainly issues like the weight of the evidence, prosecutorial misconduct, and improper communications with jurors are not small stakes in the

---

[22] The majority opinion states that Georgia does not recognize untimely standalone motions to withdraw a guilty plea. Maj. Op. at 829. It is true that in some cases we have held that a trial court properly dismissed (or improperly failed to dismiss) an untimely, standalone motion to withdraw a guilty plea, as least where the defendant failed to allege that counsel's constitutionally deficient performance deprived him of his right to timely file a motion to withdraw his plea. See, e.g., *Sims v. State*, 312 Ga. 303, 305 (862 SE2d 507) (2021). We have, however, also considered on the merits an appeal from the denial on the merits of a pleading that the trial court construed to be an out-of-time motion to withdraw his guilty plea. See *Gude v. State*, 229 Ga. 831 (194 SE2d 445) (1972). In *Gude*, the trial court found that the plea was knowing and voluntary and made with the assistance of counsel. This Court determined that the prisoner's motion made other arguments that "might appropriately be urged in a petition for writ of habeas corpus" and, therefore, had to be filed in the county of confinement. But we considered the plea-validity ruling on the merits, holding that "the record sustain[ed] the finding that the plea of guilty was intelligently and voluntarily made." Id. at 832. *Gude* has not been overruled, nor was it even discussed in any of the cases cited by the majority opinion. The majority opinion suggests that, if *Gude* can be read as having permitted untimely motions to withdraw a guilty plea, that holding was effectively overruled by our more recent decisions holding otherwise. Why then has the holding in *Neal* not been effectively overruled by the scores of more recent decisions permitting out-of-time appeals?

28

arena of constitutional due-process and fair-trial rights. But a motion to withdraw a guilty plea often goes, as in this case, to the very heart of the validity of the *waiver* of numerous constitutional protections through the entry of a guilty plea.[23] I fail to see a principled reason to deny guilty-plea defendants access to the procedural tool we created. If, as the majority opinion theorizes, a motion to withdraw a guilty plea is filed, pursuant to a granted out-of-time appeal, many years after the plea, and lost or destroyed records and dead or forgetful witnesses hinder the State in carrying its burden of proving that a guilty plea was voluntary, knowing, and intelligent, it should be short work for the State to establish the defense of prejudicial delay. See Maj. Op. at 831; *Collier*, 307 Ga. at 374-375 (2).

Our judicially created out-of-time appeal procedure has

---

[23] In Schoicket's second amended motion for out-of-time appeal, she contends that her mental health deteriorated during her pretrial incarceration to the extent that she was not capable of making a competent, knowing, and voluntary plea and that her plea counsel's assistance was ineffective in failing to investigate her mental health and request a postponement of the plea hearing for a competency evaluation. Schoicket listed her medications and described their effects and attached copies of jail records reflecting her diagnoses.

presented Georgia courts with many confounding questions over several decades. At multiple points, we could have retracted our recognition of the out-of-time appeal procedural vehicle and once again adhered to our conclusion in *Neal* that the General Assembly in the Habeas Corpus Act provided an adequate remedy – and the exclusive one[24] — for the right of appeal frustrated by the ineffective assistance of counsel.[25] As the majority opinion intimates with its

---

[24] See OCGA §§ 9-14-40 (a) ("The General Assembly finds that: (1) Expansion of the scope of habeas corpus in federal court by decisions of the United States Supreme Court together with other decisions of the court substantially curtailing the doctrine of waiver of constitutional rights by an accused and limiting the requirement of exhaustion of state remedies to those currently available have resulted in an increasingly large number of convictions of the courts of this state being collaterally attacked by federal habeas corpus based upon issues and contentions not previously presented to or passed upon by courts of this state; (2) The increased reliance upon federal courts tends to weaken state courts as instruments for the vindication of constitutional rights with a resultant deterioration of the federal system and federal-state relations; and (3) To alleviate such problems, it is necessary that the scope of state habeas corpus be expanded and the state doctrine of waiver of rights be modified."); 9-14-41 ("Notwithstanding the other provisions of this chapter [Title 9, Article 1, general provisions for habeas corpus], this article [Title 9, Article 2, procedure for person under sentence of a state court of record] provides the exclusive procedure for seeking a writ of habeas corpus for persons whose liberty is being restrained by virtue of a sentence imposed against them by a state court of record."); Ga. L. 1967, p. 835, § 1.

[25] As the majority opinion puts it, we have begun to trim back and retreat from our broad statements in *Ponder* and *Maxwell*, cases we disapproved of in *Kelly*. Maj. Op. at 828-829. We expressly held in *Kelly* that "the effect of the grant of an out-of-time appeal is to restore the defendant to the position [she]

30

citation to *Duke v. State*, 306 Ga. 171, 186 (4) (829 SE2d 348) (2019), and as Justice Colvin persuasively explicates in her dissent, we have the power to do so. See Maj. Op. at 831.

In his special concurrence in *Collier*, Justice Peterson was rightly critical of the Court's improper, if "well-intentioned," incursion into policy-setting territory but warned that unweaving our "tangled mess" of judicially created post-conviction remedies could be "unduly disruptive to the system that has built up around" motions for out-of-time appeals. See *Collier*, 307 Ga. at 379 (Peterson, J., concurring specially). And the majority opinion now

occupied at the time [she] forfeited [her] right to appeal (or seek other post-conviction relief)." 311 Ga. at 831. Our holding in *Kelly* creates the next point we will have to clarify. In more than three-quarters of Georgia's superior courts, by my count, a new term of court did not commence before Schoicket forfeited her right to appeal, that is, when she failed to file a notice of appeal within 30 days after the court entered judgment on October 11, 2016. See OCGA § 15-6-3. If Schoicket had entered her guilty plea in one of those superior courts, and the granted out-of-time appeal restored her to the position she occupied at the time she forfeited her right to "seek other post-conviction relief," per *Kelly*, she would have been restored to the position she occupied when she had forfeited her right to appeal but had not yet forfeited her right to file a motion to withdraw her guilty plea. Because Schoicket entered her guilty plea in the Superior Court of Walton County, however, she had already forfeited her right to file a motion to withdraw her guilty plea when she forfeited her right to appeal, see OCGA § 15-6-3 (2) (B), and settling this aspect of the tangled mess can be left for another day.

insists that this Court lacks the authority "to substitute our policy preferences for those of the General Assembly and thereby allow a defendant to skirt the legislatively established process." Maj. Op. at 831. Yet, by allowing out-of-time appeals, we have, repeatedly, already substituted our policy preferences for those of the General Assembly and allowed defendants to skirt the legislatively-established habeas process. And in *Collier* this Court unanimously opted once again not to terminate the practice. In my view, Schoicket is not asking that we "mak[e] up new policy" and "invent [an] additional remed[y]," as the majority opinion assumes. Schoicket is merely asking that we recognize that the parallel post-conviction process we have already invented includes guilty-plea convictions. Limiting the effect of a granted out-of-time appeal for guilty-plea defendants, because of practical considerations, while continuing to allow trial courts to permit trial-convicted defendants to start the post-conviction process anew, because of amorphous interests in stability and because the General Assembly has tolerated that scheme and indeed "appropriated substantial funds

32

to make that system work," is no less setting policy than it was to permit the procedure in the first place. See Maj. Op. at 832. If we must continue to wait for the General Assembly to "save us from ourselves" (as we have been waiting for decades),[26] at least we can ensure that access to the misbegotten procedure is provided in an even-handed manner. If we are unwilling to do so, we should do as Justice Colvin suggests in her dissent and fix the problem outright. The General Assembly is fully capable of resolving how to allocate funds to make the system work. Indeed, the General Assembly would be freed from having to appropriate, in addition to funds to make the post-conviction system work as it intended when it adopted the Habeas Corpus Act over 50 years ago, *additional* substantial funds to make our judicially-created parallel system work.

I question too whether we as the judiciary can do nothing to

---

[26] I join Justice Colvin in wondering what legislative fix we are waiting for, given the General Assembly's provision of the exclusive — and, as we found in *Neal*, an adequate — vehicle for prisoners to obtain post-conviction relief from a substantial denial of their constitutional rights.

ameliorate this tangled mess, at least partially, short of entirely abolishing the procedure. Georgia's uniform court rules already provide a useful checklist for plea colloquies that incorporate many elements embodied in decisional law of what a defendant must understand in order for a waiver of fair-trial rights to be knowing.[27] Trial courts routinely include in such colloquies the statutory mandate that, before a trial court accepts a guilty plea, the defendant be informed of the four-year (for felonies) or one-year (for misdemeanors) limits, adopted in 2004, for filing a petition for a writ of habeas corpus.[28] If the General Assembly is not inclined to act to entirely clean up the mess we have created, at the very least we could ameliorate some of the issues by adopting a court rule that, before accepting a guilty plea, a trial court should inform the

---

[27] See Uniform Superior Court Rule 33.8; Uniform State Court Rules, preamble (Except as otherwise provided, the Uniform Rules for the Superior Courts shall be applicable in State Courts.).

[28] See OCGA § 9-14-42 (c) (limitation periods), (d) (requirement that, at the time of sentencing, the court inform the defendant of the statutory periods of limitation); Ga. L. 2004, p. 917, §1. The record in this case shows that the trial court concluded the plea hearing by stating, "I advise you that you have four years from the date that these sentences are final to file for a habeas corpus. Do you understand that?" Schoicket responded affirmatively.

defendant on the record that her ability to file a timely motion to withdraw her guilty plea ends on the last day of the term of court;[29] to specify that date; to inform the defendant that she has a right to a direct appeal; and to specify the date by which a notice of appeal must be filed. In addition, trial courts could be required to inform a defendant that plea counsel is required to represent the defendant, unless either another attorney is substituted in place of plea counsel or plea counsel is allowed by court order to withdraw as counsel, until the later of the end of the term of court or the last day to file a notice of appeal;[30] that plea counsel is required to avoid procedural default of those remedies if the defendant desires to pursue them;[31] and that the defendant is not entitled to file pleadings on her own behalf while she is still represented by counsel.[32] If a defendant was provided this information, it would be

---

[29] See *Lay v. State*, 289 Ga. 210, 211 (710 SE2d 141) (2011).
[30] See *Dos Santos*, 307 Ga. at 157-159 (5).
[31] See *McAuliffe v. Rutledge*, 231 Ga. 745, 746 (204 SE2d 141) (1974); *McAuliffe v. Rutledge*, 231 Ga. 1, 2-3 (200 SE2d 100) (1973).
[32] See *Dos Santos*, 307 Ga. at 154-155 (3).

less unfair to rest the responsibility for a procedural default on the defendant's own shoulders, and the remedies created by statute (a motion in arrest of judgment[33] and habeas[34]) would suffice.

I respectfully dissent as to Division 1.

---

[33] See OCGA § 17-9-60 et seq. (A party may move in arrest of any criminal judgment within the term at which the judgment was entered for any non-amendable defect that appears on the face of the record or pleadings.); *Lay*, 289 Ga. at 211 (A claim that an indictment failed to allege an essential element of the crime raised a proper ground for a motion in arrest of judgment.).

[34] See OCGA § 9-14-40 et seq.

COLVIN, Justice, dissenting in part.

After we correctly ruled in *Neal v. State*, 232 Ga. 96 (205 SE2d 284) (1974) that a prisoner seeking to file an out-of-time direct appeal must do so in a petition for a writ of habeas corpus, id. at 96, this Court "created out of whole cloth . . . a tangled mess of post-conviction jurisprudence" that permitted prisoners to instead pursue post-conviction relief through a standalone motion for out-of-time direct appeal in a court of conviction, see *Collier v. State*, 307 Ga. 363, 379 (834 SE2d 769) (2019) (Peterson, J., concurring specially). Today, a majority of this Court acknowledges once again that we should never have invented this procedural vehicle, which has caused headache after headache as courts seek to define the contours of a made-up post-conviction proceeding. See Maj. Op. at 825, 826. Nevertheless, the majority chooses to trim the edges of our jurisprudence rather than to address the root cause of the problem.

In my view, it is inappropriate for us to continue waiting for the General Assembly "to save us from ourselves." *Collier*, 307 Ga. at 379 (Peterson, J., concurring specially). It is our responsibility,

not the General Assembly's, to fix our own mistakes, and this is particularly true when, as here, the General Assembly clearly addressed the issue more than 50 years ago by providing an adequate and exclusive vehicle for prisoners to obtain post-conviction relief from a substantial denial of their constitutional rights — namely, a habeas petition. See *Neal*, 232 Ga. at 96 ("Under the Habeas Corpus Act of 1967, there is provided an adequate post-conviction remedy to a prisoner seeking relief upon a claim arising from the substantial denial of rights guaranteed by the Federal or State Constitutions . . . ." (citation omitted)); see also OCGA § 9-14-41 ("[T]his article provides the exclusive procedure for seeking a writ of habeas corpus for persons whose liberty is being restrained by virtue of a sentence imposed against them by a state court of record."). I see no good reason to require the General Assembly to pass new legislation stating that it really meant what it said when it passed the Habeas Corpus Act of 1967, OCGA § 9-14-40 et seq. The law, as written, governs.

In explaining the decision not to take any steps toward

38

untangling our post-conviction jurisprudence ourselves, the majority appears to be under the impression that eliminating the standalone out-of-time appeal procedure might be "disruptive to the system that has developed around it," and that this Court need not eliminate the procedural vehicle to avoid "add[ing] to th[e] mess." See Maj. Op. at 830 & n.6. No doubt, reverting to the status quo as of 1974, when we issued *Neal*, would disrupt the system to some extent. Indeed, that would be the point – to follow the law set out by the General Assembly rather than the conflicting law we invented.

I disagree, however, that the majority has avoided adding to the mess by trimming back some of our precedent. As Justice Ellington notes in his partial dissent, the majority has declined to follow the clear logical import of our precedent. As a result, the majority has created an even more inconsistent legal landscape that favors prisoners found guilty at trial over those who entered a guilty plea — all in an effort to "avoid dispensing unwarranted windfalls." See Maj. Op. at 825, 826. Let me suggest, however, that receiving

39

an out-of-time appeal without having first prevailed in a habeas proceeding is itself an "unwarranted windfall" — given that the General Assembly did not provide a vehicle for prisoners to seek such relief in the court of conviction and a majority of this Court appears to agree that granting such relief in an "invented" post-conviction proceeding does not comport with the law. See Maj. Op. at 826, 832. That being the case, we should follow *Neal* rather than our made-up subsequent precedent that has caused no shortage of difficulties.

I agree with the majority that "[w]e lack the authority to substitute our policy preferences for those of the General Assembly and thereby allow a defendant to skirt the legislatively established process." Maj. Op. at 831. Indeed, that is the reason I believe we ought to fix the problem outright and require prisoners seeking an out-of-time appeal and associated remedies to use the habeas procedures that the General Assembly has afforded. Barring that, however, we should follow the logic of our prior holdings as Justice Ellington suggests. Doing so would at least ensure that similarly

situated prisoners are treated equally, whether their convictions resulted from a guilty plea or a jury verdict, and that trial courts, litigants, and the public at large can follow our reasoning.

Given a choice between the majority's decision to unfairly narrow our post-*Neal* precedent and Justice Ellington's consistent application of that precedent, I would favor the latter approach. In my view, however, neither approach fully comports with the governing law. Accordingly, I separately dissent with respect to Division 1.

Decided November 2, 2021 — Reconsideration denied November 17, 2021.

Murder. Walton Superior Court. Before Judge Ozburn, Senior Judge.

*Clifford L. Kurlander*, for appellant.

*Randal M. McGinley, District Attorney, W. Cliff Howard, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.