**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: June 24, 2025

S25G0132. THE MEDICAL CENTER OF CENTRAL GEORGIA, INC., et al. v. NORKESIA TURNER, et al.

LaGrua, Justice.

After Allen Turner died from surgical complications, his daughter, Norkesia Turner ("Turner"), sued Drs. William Thompson and Heather Nolan, as well as their employer, the Medical Center of Central Georgia, Inc. (collectively, "MCCG"), for medical malpractice and wrongful death.[1] The action proceeded to trial, and the jury returned verdicts in Turner's favor. Among other damages not at issue here, the jury awarded approximately $7.2 million in noneconomic damages specifically "for wrongful death" – a figure meant to quantify, as best the law can, "the full value of the life of

---

[1] Turner's medical malpractice claims were brought in her capacity as administrator of her father's estate. See OCGA §§ 51-1-27 and 53-7-1. Turner's wrongful death claim was brought in her personal capacity as her father's surviving next of kin. See OCGA §§ 51-4-1 et seq.

the decedent, as shown by the evidence." OCGA §§ 51-4-1 and 51-4-2 (a). After the verdicts, but before entry of final judgment, MCCG moved the trial court to reduce the $7.2 million noneconomic damages award to the maximum amount allowable under OCGA § 51-13-1 (b) and (c).[2] Pointing to our decision in *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286 Ga. 731 (691 SE2d 218) (2010), the trial court denied MCCG's motion and concluded that the statutory

---

[2] OCGA § 51-13-1 was enacted as part of the Tort Reform Act of 2005 to "limit[] awards of noneconomic damages in medical malpractice cases to a predetermined amount." See *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286 Ga. 731, 731 (691 SE2d 218) (2010) (citing Ga. L. 2005, p.1, § 1). The subsections relevant to the present case provide:

(b) In any verdict returned or judgment entered in a medical malpractice action, including an action for wrongful death, against one or more health care providers, the total amount recoverable by a claimant for noneconomic damages in such action shall be limited to an amount not to exceed $350,000.00, regardless of the number of defendant health care providers against whom the claim is asserted or the number of separate causes of action on which the claim is based.

(c) In any verdict returned or judgment entered in a medical malpractice action, including an action for wrongful death, against a single medical facility, inclusive of all persons and entities for which vicarious liability theories may apply, the total amount recoverable by a claimant for noneconomic damages in such action shall be limited to an amount not to exceed $350,000.00, regardless of the number of separate causes of action on which the claim is based.

OCGA § 51-13-1 (b) and (c). See also OCGA § 51-13-1 (a) (defining terms) and OCGA § 51-13-1 (e) (setting an aggregate limit on noneconomic damages recoverable under subsections (b) and (c)).

2

maximum limits on noneconomic damages (or "caps") contained in OCGA § 51-13-1 (b) and (c) were "not applicable" to the wrongful death noneconomic damages awarded to Turner on the basis that this Court had already "found [the caps] to be unconstitutional" in *Nestlehutt*. See generally 286 Ga. at 732-738 (2).

MCCG appealed to the Court of Appeals, which affirmed the trial court and echoed its reasoning that our decision in *Nestlehutt* "foreclosed" MCCG's post-trial efforts. See *The Medical Center of Central Georgia, Inc. v. Turner*, 372 Ga. App. 644, 652-655 (2) (905 SE2d 858) (2024) (rejecting MCCG's argument that the $7.2 million noneconomic damages award for wrongful death "must be remitted and amended because it exceeded the $350,000 cap on noneconomic damages imposed by OCGA § 51-13-1" on the basis that "this argument is foreclosed by binding Supreme Court of Georgia precedent"). MCCG petitioned this Court for a writ of certiorari, which we granted to address whether the Court of Appeals properly applied our precedent for determining whether a legislative enactment violates Georgia's constitutional right to trial by jury. See

3

*Nestlehutt*, 286 Ga. at 732-738 (2); *Taylor v. The Devereux Foundation, Inc. et al.*, 316 Ga. 44, 55-81 (III) (885 SE2d 671) (2023). See also Ga. Const. Art. I, § I, Par. XI (1983) ("The right to trial by jury shall remain inviolate . . . .").

Today, we do not reach the ultimate question of whether Turner's constitutional right to trial by jury would be violated by application of OCGA § 51-13-1's caps to the $7.2 million noneconomic damages awarded in this case because the record shows – and the parties agree – that the lower courts have not applied the analytical framework set out by our precedent to the wrongful death claim and the "full value of the life" damages awarded in this case. See OCGA §§ 51-4-1 and 51-4-2 (a). Instead, both lower courts appear to have interpreted and applied the language of our decisions in concluding that *Nestlehutt* controlled the outcome. While we recognize that our decision in *Nestlehutt* used broad and, at times, imprecise language when discussing the interplay between the constitutional right to trial by jury and the statutory caps in OCGA § 51-13-1, see generally *Nestlehutt*, 286 Ga.

4

at 732-738 (2), the language relied upon by the lower courts was not a holding that controls the outcome of this case.

Courts must take care not to apply a given judicial decision by simply parsing or interpreting the language of that decision, like we might construe a statute. Instead, ascertaining "whether a precedent controls a decision in a later case turns on the scope of the relevant holding of that precedent." *State v. Wierson*, __ Ga. __, __ (__ SE2d __) (2) (b) (ii) (Case No. S24G1299, decided May 28, 2025). As a general matter, the holding of a judicial decision "includes, to some degree, the reasoning or principles that were necessary to that decision." Id. Of course, if a court did not reach a decision on a particular issue, it necessarily issued no holding on that issue. And a court cannot reach a decision on a particular issue when that issue is not presented or implicated by the "factual context of the case being decided." *Schoicket v. State*, 312 Ga. 825, 832 (1) (865 SE2d 170) (2021) (citation omitted). See *Wierson*, __ Ga. at __ (2) (b) (ii) ("[W]hen courts distinguish past precedents, they do not look for just any facts that are different from the case before them, but rather for

circumstances relevant to, and which place the current case outside of, the [holding] of the precedent in question.") (citations omitted). In short, "[l]anguage that sounds like a holding – but actually exceeds the scope of the case's factual context – is not a holding no matter how much it sounds like one." *Schoicket*, 312 Ga. at 832 (1).

In *Nestlehutt*, the only issue before us was whether OCGA § 51-13-1's caps could be constitutionally applied to reduce a jury's award of noneconomic damages for pain and suffering and loss of consortium following a verdict in the plaintiffs' favor for medical malpractice claims. See 286 Ga. at 732-738 (2). In resolving that issue, we considered whether the type of underlying claim of liability at issue (i.e., a medical malpractice claim) existed in Georgia in 1798,[3] whether the right to trial by jury attached for that type of claim in Georgia in 1798, and whether the damages awarded by the

---

[3] In evaluating the type of underlying claim of liability at issue under *Nestlehutt*'s framework, we do not require a perfect match in nomenclature and a suitable analog cognizable "under late eighteenth century English common law" may suffice. See, e.g., *Nestlehutt*, 286 Ga. at 732-733 (2) (a) (tracing "[t]he antecedents of the modern medical malpractice action" to common law "medical negligence claims"); *Taylor*, 316 Ga. at 64 (III) (D) (1) (explaining how predecessor to modern theory of premises liability flowed from common law "liab[ility] for failure to keep their premises safe for invitees").

jury (i.e., noneconomic damages for pain and suffering and loss of consortium) were damages determined by juries for that type of claim in Georgia in 1798. See *Nestlehutt*, 286 Ga. at 732-738 (2); *Taylor*, 316 Ga. at 59-81 (III). Ultimately, we concluded that the answer was "yes" as to each of those considerations, such that application of OCGA § 51-13-1's caps to the noneconomic damages for pain and suffering and loss of consortium that were awarded to the plaintiffs for their successful medical malpractice claims violated the constitutional right to trial by jury. See *Nestlehutt*, 286 Ga. at 732-738 (2). In other words, the analytical framework that we set out and applied in *Nestlehutt* – that is, "the reasoning [and] principles that were necessary to that decision" – was claim- and remedy-specific. *Wierson*, __ Ga. at __ (2) (b) (ii). See id. Therefore, because the question of whether OCGA § 51-13-1's caps can be constitutionally applied to statutory wrongful death claims (and their associated "full value of the life" damages) was not at issue in *Nestlehutt*, the *Nestlehutt* Court could not (and did not) decide the issue presented in this case. *Wierson*, __ Ga. at __ (2) (b) (ii) (citations

7

and punctuation omitted); *Schoicket*, 312 Ga. at 832 (1) (citation omitted). See generally *Nestlehutt*, 386 Ga. at 732-738 (2). Consequently, *Nestlehutt*'s holding does not control the question at issue in this case, and the lower courts erred in concluding otherwise.

Because the lower courts relied upon a contrary view of *Nestlehutt'*s breadth in reaching their shared conclusions and, as a result, did not apply the analytical framework set out by our precedent, the constitutional questions in this case have not been addressed by the lower courts consistent with our precedent. We decline to apply that framework in the first instance. See *Wasserman v. Franklin County*, 320 Ga. 624, 653 (III) (B) (911 SE2d 583) (2025) ("We are a court of review, not of first view[.]") (citation omitted). See, e.g., *Efficiency Lodge, Inc. v. Neason*, 316 Ga. 551, 567 (3) (889 SE2d 789) (2023) (vacating and remanding case where lower courts had yet to apply the relevant legal framework set out by our precedent to the issues presented). See also *Brewer v. State of Ga.*, 281 Ga. 283, 284-285 (2) (637 SE2d 677) (2006) (explaining that

constitutional arguments "not raised and ruled on below" will not be addressed by this Court).

Accordingly, we vacate the decision of the Court of Appeals and remand with direction for the Court of Appeals to return this case to the trial court for additional proceedings in light of this opinion.

*Judgment vacated and case remanded. Warren, PJ, and Bethel, Ellington, McMillian, Colvin, and Pinson, JJ concur. Peterson, CJ, disqualified.*

9

COLVIN, Justice, concurring.

I concur in full with the majority opinion. I write separately only to reiterate that, in an appropriate case where the issue is squarely presented, we should reexamine whether we correctly decided *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286 Ga. 731 (691 SE2d 218) (2010). As I have previously noted, the constitutional right to a jury trial has traditionally been understood as "a procedural right to have a jury, rather than a judge, decide questions of fact" in certain cases. *Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 103 (885 SE2d 671) (2023) (Colvin, J, concurring specially) (emphasis omitted). And *Nestlehutt* appears to be inconsistent with that traditional understanding of the right in that it "recognize[d] a novel substantive component of the right," which "limits a legislature's ability to define the legal principles applicable to a cause of action." Id. at 102, 104. Whether *Nestlehutt* was correctly decided is a question beyond the scope of our order granting certiorari in this case. But I continue to believe that "[w]e should take a careful look at *Nestlehutt* in an appropriate case." Id. at 104.